NO. 24-1896

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

ENTROPIC COMMUNICATIONS, LLC,

*Plaintiff,*

v.

CHARTER COMMUNICATIONS, INC.,

*Defendant-Appellee,*

v.

THE ELECTRONIC FRONTIER FOUNDATION,

*Movant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Texas, Marshall Division
Case No. 2:22-cv-00125-JRG
Chief Judge J. Rodney Gilstrap

## OPENING BRIEF OF MOVANT - APPELLANT
## ELECTRONIC FRONTIER FOUNDATION

Christopher J. Morten
MORNINGSIDE HEIGHTS LEGAL SERVICES, INC.
(Columbia Law School) 435 W 116th St
(Jerome Greene Hall),
Room 831
New York, NY 10027
cjm2002@columbia.edu
Telephone: 212-854-1845

Aaron Mackey
Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
amackey@eff.org
Telephone: (415) 436-9333
Fax:  (415) 436-9993

*Counsel for Movant - Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 24-1896

**Short Case Caption** Entropic Communications, LLC v. Charter Communication

**Filing Party/Entity** Movant - Appellant Electronic Frontier Foundation

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/05/2024

Signature: /s/ Aaron Mackey

Name: Aaron Mackey

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| Electronic Frontier Foundation | n/a | n/a |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable      ☐ Additional pages attached

| n/a | | |
|---|---|---|
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)   ☐ No   ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable      ☐ Additional pages attached

| N/A | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST.................................................................................i

TABLE OF CONTENTS ...................................................................................iv

TABLE OF AUTHORITIES............................................................................ vii

STATEMENT OF RELATED CASES..................................................................1

PRELIMINARY STATEMENT .............................................................................1

JURISDICTIONAL STATEMENT ........................................................................3

STATEMENT OF THE ISSUES ...........................................................................4

STATEMENT OF THE CASE AND FACTS ........................................................4

    I.       FACTUAL BACKGROUND..............................................................4

          A.    The Asserted Patent Infringement Claims Allegedly Involve an International Data Transmission Standard Used in All Cable Modems. ............................................................4

          B.    The Parties Stipulate to Use the District Court's Sample Protective Order and File Entirely Sealed or Heavily Redacted Summary Judgment Materials Concerning DOCSIS. ....................................................................5

          C.    Charter and Entropic Continue to Litigate Sealing Issues After Settling the Dispute and Closing the Case. .......................8

          D.    EFF Asks Charter and Entropic to Provide Greater Public Access to Sealed Filings. ...........................................9

    II.     PROCEDURAL HISTORY ..............................................................11

STANDARD OF REVIEW....................................................................................11

SUMMARY OF THE ARGUMENT....................................................................12

ARGUMENT ........................................................................................................14

I.      EFF HAS STANDING TO INTERVENE AND TO UNSEAL
        JUDICIAL RECORDS. .....................................................................14

II.     THE DISTRICT COURT ABUSED ITS DISCRETION BY
        DENYING EFF'S MOTION TO INTERVENE FOR THE LIMITED
        PURPOSE OF VINDICATING THE PUBLIC'S RIGHTS TO
        ACCESS JUDICIAL RECORDS. ....................................................15

        A.      EFF's Intervention Request Satisfied All Four Factors
                Considered by the Fifth Circuit under Rule 24(b). ...................15

                1.      EFF's Intervention Was Timely under Rule 24(b).........17

                2.      EFF's Intervention Did Not Prejudice the Parties..........22

                3.      The Prejudice to EFF Weighs in Favor of Intervention. 26

                4.      The Unusual Circumstances of the Sealing Practices in
                        this Case Weigh in Favor of EFF's Intervention............28

        B.      The Implications of the District Court's Denial of EFF's
                Motion to Intervene Effectively Frustrate Public Access to
                Sealed Records in Closed Cases. ..............................................29

III.    THE DISTRICT COURT ABUSED ITS DISCRETION BY
        FAILING TO APPLY CONTROLLING LAW GOVERNING
        PUBLIC ACCESS TO THE SEALED RECORDS. ..........................32

        A.      The Public's Rights of Access to Judicial Records Prohibits
                Overbroad Sealing of Judicial Records. ...................................32

                1.      A Strong Presumption of Public Access Attaches to
                        the Sealed Filings. ..........................................................32

                2.      The Sealing Practices Endorsed by the District Court
                        Violate the Public's Common Law Right of Access......35

        B.      The District Court Abused Its Discretion by Failing to Apply
                Fifth Circuit Precedent Protecting the Public Right of
                Access. ......................................................................................36

                1.      The District Court Failed to Articulate or Apply the
                        Correct Legal Standard....................................................36

2. The District Court Ignored Controlling Law that Prohibits Relying on a Protective Order to Seal Judicial Records. ..........................................................37

3. The District Court Did Not Articulate Any Valid Reason to Seal the Documents. .....................................40

4. The District Court Failed to Individually Evaluate the Sealed Filings. ...............................................................41

C. The District Court's Interpretation of Local Rule CV-5(a)(7)(B) Was Erroneous as a Matter Of Law. ......................42

1. The Plain Meaning of Local Rule CV-5(a)(7)(B) Forecloses the District Court's Interpretation. ...............43

2. The District Court's Interpretation of Local Rule CV-5(a)(7)(B)(2) Creates a Conflict that Should Be Avoided. ........................................................................46

CONCLUSION ....................................................................................48

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Cryovac, Inc.*,
    805 F.2d 1 (1st Cir. 1986) ................................................................34

*Apple Inc. v. Samsung Elecs. Co.*,
    727 F.3d 1214 (Fed. Cir. 2013) ........................................................11

*Barrett v. United States*,
    423 U.S. 212 (1976) ..........................................................................44

*Binh Hoa Le v. Exeter Fin. Corp.*,
    990 F.3d 410  (5th Cir. 2021) ................................................... *passim*

*Bradley on behalf of AJW v. Ackal*,
    954 F.3d 216 (5th Cir. 2020) .......................................................3, 11

*Brown v. Maxwell*,
    929 F.3d 41 (2d Cir. 2019) ................................................................30

*Carr v. United States*,
    560 U.S. 438 (2010) ..........................................................................44

*Davis v. East Baton Rouge Parish School Bd.*,
    78 F.3d 920 (5th Cir. 1996) ..........................................................4, 16

*Delaware Coalition for Open Government, Inc. v. Strine*,
    733 F.3d 510 (3d Cir. 2013) ..............................................................34

*E.E.O.C. v. National Children's Ctr.*,
    146 F.3d 1042 (D.C. Cir. 1998) ........................................................16

*Estate of Hearst*,
    67 Cal.App.3d 777 (Cal. Ct. App. 1977) ..........................................31

*Foltz v. State Farm Mut. Auto Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ..........................................................28

*Gannett Co., Inc. v. DePasquale*,
    443 U.S. 368 (1979) ..........................................................................32

*Henry v. Lake Charle Am. Press*,
    566 F.3d 164 (5th Cir. 2009) ..............................................................3

*Hersh v. U.S. ex rel. Mukasey*,
    553 F.3d 743 (5th Cir. 2008) ............................................................47

*I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
  82 F.4th 402 (5th Cir. 2023) ...........................................................34, 37, 40, 43

*In re Beef Industry Antitrust Litigation*,
  589 F.2d 786 (5th Cir. Tex. 1979) ....................................................................16

*In re Marriage of Nicholas*,
  186 Cal.App.4th 1566 (Cal. App. 2010). .........................................................26

*Jam v. Int'l Fin. Corp.*,
  586 U.S. 199 (2019).........................................................................................44

*John v. State of Louisiana*,
  757 F.2d 698 (5th Cir. 1985) ...........................................................................47

*Joy v. North*,
  692 F.2d 880 (2d Cir. 1982)..............................................................................34

*June Medical Services, L.L.C. v. Phillips*,
  22 F.4th 512 (5th Cir. 2022) ...................................................................... *passim*

*Kamakana v. City and County of Honolulu*,
  447 F.3d 1172 (9th Cir. 2006) ..........................................................................41

*Littlejohn v. Bic Corp.*,
  851 F.2d 673 (3d Cir. 1988)..............................................................................27

*Macklin v. City of New Orleans*,
  293 F.3d 237 (5th Cir. 2002) ............................................................................42

*Matter of Thalheim*,
  853 F.2d 383 (5th Cir. 1988) ............................................................................43

*N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*,
  781 F.3d 182 (5th Cir. 2015) ............................................................................37

*Newby v. Enron Corp.*,
  443 F.3d 416 (5th Cir. 2006). ...............................................................15, 17, 23

*Nixon v. Warner Commc'ns, Inc.*,
  435 U.S. 589 (1978).........................................................................................33

*Niz-Chavez v. Garland*,
  593 U.S. 155 (2021).........................................................................................45

*Pansy v. Stroudsburg*,
  23 F.3d 772  (3d Cir. 1994)........................................................................21, 31

*Phoenix Newspapers, Inc. v. U.S. District Court*,
  156 F.3d 940 (9th Cir. 1998) ............................................................................32

*Richmond Newspapers, Inc. v. Virginia*,
 448 U.S. 555 (1980) ...................................................................28, 33

*Rosado v. Bridgeport R.C. Diocesan Corp.*,
 884 A.2d 981 (Conn. 2005) .................................................21, 29, 30

*S.E.C. v. Van Waeyenberghe*,
 990 F.2d 845 (5th Cir. 1993) .......................................................27, 36

*Seago v. O'Malley*,
 91 F.4th 386 (5th Cir. 2024) .......................................................43, 45

*Stallworth v. Monsanto Co.*,
 558 F.2d 257 (5th Cir. 1977) ............................................... *passim*

*U.S. v. Hickey*,
 185 F.3d 1064 (9th Cir. 1999) .............................................................15

*U.S. v. Holy Land Found. for Relief & Dev.*,
 624 F.3d 685 (5th Cir. 2010) .......................................................15, 16

*U.S. v. Ladd*,
 218 F.3d 701 (7th Cir. 2000) .............................................................16

*U.S. v. Sealed Search Warrants*,
 868 F.3d 385 (5th Cir. 2017) .............................................................41

*United States ex rel Hernandez v. Team Finance, LLC*,
 80 F.4th 571 (5th Cir. 2023). ............................................... *passim*

*United States ex rel. Oberg v. Nelnet, Inc.*,
 105 F.4th 161 (4th Cir. 2024) .............................................................34

*United States Gas Pipe Line Co. v. F.E.R.C.*,
 824 F.2d 417 (5th Cir. 1987) .......................................................47, 48

*Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*,
 913 F.3d 443 (5th Cir. 2019) .............................................................11

*Walters v. Metro. Educ. Enterprises, Inc.*,
 519 U.S. 202 (1997) .........................................................................43

**Statutes**

28 U.S.C. § 1291 ................................................................................3

**Rules**

E.D. Tex. Local Rule CV-5(a)(7)(B).......................................... *passim*

E.D. Tex. Local Rule CV-7(h) ...........................................17, 21, 22, 28

Fed. R. Civ. P. 24(b) ........................................................................... *passim*

Fed. R. Civ. P. 26(c) ...................................................................... 38, 39

**Other Authorities**

Jacob Shamsian, *This one lawsuit unleashed a flood of stories unraveling Jeffrey Epstein mysteries and led to Ghislaine Maxwell's arrest on sex-trafficking charges*, Business Insider (Nov. 18, 2021) ......................................... 30

Paul Vitello, *Bridgeport Diocese Loses Bid to Keep Sex-Abuse Records Sealed*, New York Times (Oct. 5, 2009) ........................................................ 30

Staff Report, *Stroudsburg Settled With Pansy For $100,000*, Morning Call (July 29, 1994) ............................................................................................ 31

## STATEMENT OF RELATED CASES

Pursuant to Fed. Cir. R. 47.5(b)(1), an appeal from the same civil action was previously before Judges Dyk, Cunningham, and Stark: *In re Charter Communications, Inc.*, No. 23-136, 2023 WL 5688812 (Fed. Cir. Sept. 5, 2023). The Court denied Charter Communications, Inc's petition for writ of mandamus in an unreported opinion on September 5, 2023.

Pursuant to Fed. Cir. R. 47.5(b)(2), EFF is not aware of any other case pending before this Court or any other tribunal that will directly affect or be directly affected by this Court's decision in this pending case.

## PRELIMINARY STATEMENT

This case concerns a district court's misuse of procedural rules to stop the Electronic Frontier Foundation (EFF) from intervening in a recently closed case to challenge collusive sealing practices that frustrate public access. EFF, a nonprofit that advocates for greater transparency in patent litigation, sought to intervene after observing that Charter Communications, Inc. (Charter) and Entropic Communications, LLC (Entropic) had sealed numerous judicial records in this case without a motion.

The sealed records detail a central dispute between Charter and Entropic: whether the asserted patents are essential to an international cable data transmission standard and thus encumbered by licensing commitments. Charter and Entropic filed

their summary judgment briefing on the issue largely under seal, relying on a stipulated protective order to justify their secrecy. The protective order was a near facsimile of the district court's sample protective order for patent disputes. Both contain a provision requiring parties to file under seal any material they self-designated as confidential, along with any related filings referencing them.

EFF sought to intervene in the case for the limited purpose of vindicating the public's presumptive rights to access these judicial records under the First Amendment and common law. The district court denied EFF's intervention as untimely and prejudicial, and held that the materials were properly sealed because a local rule authorized the parties to rely on the protective order for such broad secrecy.

The district court abused its discretion in denying EFF's motion, and its order is unlawful in multiple respects. On top of these legal errors, however, the order also has troubling implications for public access more broadly. The order implies that intervention to challenge secrecy is essentially impossible once a case is closed. And it further reasons that parties and courts can evade the robust protections ensuring public access to judicial records if they all agree to a protective order that requires parties to file designated materials under seal. That reasoning subverts the public's presumptive rights of access.

This Court should reverse the district court, grant EFF intervention, and affirm that controlling law prohibits parties and district courts from relying on protective

orders as a substitute for the more robust legal standards required to override the public's presumptive right of access to judicial records. The Court should then remand the case to the district court with instructions to apply the correct legal standard that governs efforts to cut off public access.

The relief EFF seeks from this Court is modest. EFF does not ask this Court to order the district court to unseal the records in their entirety. EFF recognizes it is likely that some—though surely not all—of the material under seal may justifiably remain secret on remand. The problem is that neither the parties nor the district court engaged in the rigorous document-by-document and line-by-line review of the sealed filings required to justify such secrecy. The proper course is to require the district court to undertake this analysis on remand.

## JURISDICTIONAL STATEMENT

The district court's denial of EFF's motion to intervene and to unseal is appealable as a final order pursuant to 28 U.S.C. § 1291 because it completely disposed of EFF's claims seeking to intervene and to unseal records. *See Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 222–23 (5th Cir. 2020).

Alternatively, this Court has jurisdiction under the collateral order doctrine because the district court's order is final in effect regarding EFF's claims for relief. *See id.*; *Henry v. Lake Charles Am. Press*, 566 F.3d 164, 171 (5th Cir. 2009). The collateral order doctrine applies here because (1) the district court's order

conclusively determined the issues raised by EFF's motion to intervene and to unseal, (2) EFF's motion raised important issues regarding the public's common law and First Amendment rights of access to court records that are completely separate from the merits of this patent dispute, and (3) EFF's motion would be effectively unreviewable on appeal from a final judgment by the parties. *See Davis v. East Baton Rouge Parish School Bd.*, 78 F.3d 920, 926 (5th Cir. 1996).

## STATEMENT OF THE ISSUES

There are two issues before this Court:

1. Whether the district court abused its discretion in denying EFF's motion to intervene.

2. Whether the district court abused its discretion in denying EFF's motion to unseal court records.

## STATEMENT OF THE CASE AND FACTS

Although this is a patent infringement case, this appeal concerns an important ancillary issue: the public's presumptive right to access dispositive motions and related material to better understand the parties' legal claims and defenses, and the court's resolution of them.

## I. FACTUAL BACKGROUND

### A. The Asserted Patent Infringement Claims Allegedly Involve an International Data Transmission Standard Used in All Cable Modems.

Entropic, a semiconductor products provider, sued Charter, one of the nation's

largest telecommunications and mass media companies, alleging that Charter infringed Entropic's patents concerning cable modem technology (U.S. Patent Nos. 8,223,775, 8,284,690, 8,792,008, 9,210,362, 9,825,826, and 10,135,682). Appx086. Entropic alleged that Charter infringed the patents by leasing, selling, and distributing cable modems and set top boxes used by millions of customers. Appx087-088.

A key issue is the relevance of the industry-leading Data Over Cable Service Interface Specification (DOCSIS) cable data transmission standard. Appx540-541. This standard is a cornerstone of cable internet in the United States, making it unusually important. Charter raised a defense that the asserted patents are essential to comply with DOCSIS. Appx540-542. The argument implicates a core legal question in patent law: when is a particular patent "essential" to a technical standard and thus encumbered by licensing commitments? Appx540-546; Appx663-664.

> B.     **The Parties Stipulate to Use the District Court's Sample Protective Order and File Entirely Sealed or Heavily Redacted Summary Judgment Materials Concerning DOCSIS.**

Entropic and Charter stipulated to a protective order that nearly copied verbatim the district court's Sample Patent Protective Order. *Compare* Appx009-021 (stipulated protective order) *with* Appx024-036 (Sample Protective Order). The court approved the stipulated protective order. Appx021.

Entropic moved for summary judgment that Charter had no license defense

based on DOCSIS on September 11, 2023, filing its brief and exhibits under seal without any motion requesting to seal the materials. Appx113. EFF estimates that when Entropic later filed a public version of its brief, it redacted roughly 41 percent of the content of its motion. *Compare* Appx501-519 *with* Appx113. The DOCSIS license, two depositions, and an expert report filed with the brief remain entirely under seal. Appx519. It is difficult for the public to fully understand Entropic's brief, but it appears to have argued that Charter is not entitled to a license defense based on DOCSIS because the patents-in-suit are not standard-essential to DOCSIS. Appx508.

From September to October 2023, Charter and Entropic filed summary judgment briefs and exhibits concerning the DOCSIS license defense issue under seal without moving to seal the records or offering any other justification for the secrecy. *See* Appx062; Appx066; Appx069; Appx072. They filed heavily redacted public versions of each filing, making it difficult for the public to understand Charter's asserted defense and Entropic's arguments against it. Appx114-134; Appx501-537. For example, roughly 76 percent of the content of Charter's response brief is redacted, including a portion of a table of contents. Appx616; Appx115. Many exhibits Charter filed with its response are entirely sealed, with Charter also redacting the names of at least seven exhibits. Appx135-136; Appx140; Appx213-219.

Magistrate Judge Roy Payne issued a public Report and Recommendation (R&R) in November 2023, which summarized Charter's DOCSIS defense. Appx538-547. The district court later adopted the R&R, which denied-in-part and granted-in-part Entropic's summary judgment motion that Charter had no license defense based on DOCSIS. Appx549. The R&R provides limited information about the DOCSIS dispute. The R&R describes two key issues: (1) what the DOCSIS License means by "Licensed Technology" as a matter of contract interpretation and (2) whether Charter has plausibly shown any of the patents and asserted claims at issue fall within the meaning of "Licensed Technology." Appx540. The latter issue implicates the legal standard for evaluating whether a given patent is "essential" to a technical standard.

Little is publicly known about what the DOCSIS License means by "Licensed Technology" as a matter of contract interpretation because the parties never filed a public version of the license. Appx113. The parties redacted their briefing on how the term "Licensed Technology" should be construed, obscuring the contract's language and much of legal arguments on the issue. *See, e.g.*, Appx118-132; Appx504-515; *see also* Appx616-617 (collecting examples of significant redactions).

As for whether Charter had plausibly shown that any of the patents-in-suit fall within the meaning of "Licensed Technology," the parties' briefs and exhibits are

sealed and so heavily redacted that their arguments are indiscernible. For example, the R&R describes Charter as arguing that two of the asserted patents required the use of something called "full band capture (FBC)," without which Charter would allegedly not be able to use or comply with DOCSIS. Appx543-544. The R&R rejected this argument, reasoning that Charter had failed to show that these two patents were licensed because it could not show all elements of a claim required for DOCSIS compliance. Appx543-545. Redactions in the sealed papers make it difficult to know what FBC is, why FBC is relevant to infringement of these two patents, and whether Charter's products use FBC.

Charter filed a sealed objection to the public R&R in December 2023, once more without filing a motion to seal. Appx548. The public version of Charter's objection was redacted and did not provide any new detail on the two issues described above. Appx551-560. These sealed materials, along with those discussed above, constitute the Sealed Filings at issue in this appeal. Appx616-617.

### C. Charter and Entropic Continue to Litigate Sealing Issues After Settling the Dispute and Closing the Case.

Days after the district court adopted the R&R, Entropic and Charter stipulated to dismiss the case, and the court entered an order to that effect on December 10, 2023. Entropic and Charter continued to file materials in the case after formal closure, into January 2024. Those filings sought to redact a transcript of a pretrial hearing and to make public a redacted version of a sealed order regarding another

issue in the case. Appx562-580. The parties' joint motion to redact the hearing transcript is still pending before the district court. Appx569-575.

### D. EFF Asks Charter and Entropic to Provide Greater Public Access to Sealed Filings.

Concerned with the inability of the public to understand Entropic and Charter's dispute regarding the DOCSIS license defense, EFF's counsel emailed counsel for Entropic and Charter on January 5, 2024, flagging widespread violations of the public right of access in this case, including unjustified sealing of the materials described above. Appx601; Appx634-636. EFF asked the parties to provide greater access to the sealed materials or to otherwise justify, via motions to seal, how their secrecy claims overrode the public's presumptive right to access judicial records. Appx634-636.

EFF is a public interest nonprofit organization that advocates for, among other things, public awareness of the patent system. Appx658-661. EFF's interest in patents is based in part on ensuring there is a balance between the private grants to patent owners and the public interest. Appx663-664. As part of its public advocacy, EFF publishes a widely read educational blog, files amicus briefs, submits public comments to the Patent & Trademark Office, and moves to intervene and unseal judicial records in patent disputes, including in cases previously before this Court. Appx659-661. EFF also had specific interest in this case because of the legal and policy issues raised by Charter's license defense. Appx662-665.

Entropic and Charter jointly responded on January 10, 2024, that "[t]he parties' sealed filings in this case contain a statement by counsel pursuant to Local Rule CV-5 that references the protective order. As such, motions to seal are not required." Appx633-634. EFF disputed that claim, explaining that Fifth Circuit law does not permit unjustified sealing and that a protective order cannot supersede binding appellate law. Appx630-632. EFF met and conferred with Entropic and Charter by phone on January 26, 2024. Appx602. Entropic's counsel said that the company had no view on whether the information should remain sealed and said Entropic would not take any action. Appx602. Counsel for Charter reiterated that sealing is justified under the protective order and local rules. Appx602.

Shortly after the meet and confer, EFF offered to narrow the dispute to resolve its concerns out of court. Appx620-624. EFF asked Entropic and Charter to file appropriate motions to seal for all records, or portions thereof, currently under seal in this docket, that concern the DOCSIS License defense and one other dispositive motion that the parties wish to keep sealed. Appx620-624. EFF also asked the parties to promptly re-file on the docket any currently sealed records that the parties do not wish to keep sealed, in unsealed, publicly accessible form. Appx623. EFF asked that the parties respond to its request by February 9, 2024, and that it would consider any non-response by that date to mean that neither would take any further actions. Appx624. Entropic and Charter declined to take EFF's requested action. Appx620.

## II. PROCEDURAL HISTORY

EFF filed its motion to intervene and to unseal judicial records on March 20, 2024. Appx581. Entropic did not oppose EFF's motion, while Charter filed an opposition. Appx603; Appx667. The district court denied EFF's motion to intervene and to unseal in a written order on May 2, 2024. Appx001-008. EFF timely appealed. Appx085.

## STANDARD OF REVIEW

Where an appeal does not involve substantive issues of patent law, this Court applies the law of the regional circuit in which the district court sits. *Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1220 (Fed. Cir. 2013). The district court sits in the Fifth Circuit, which reviews a denial of a motion to intervene pursuant to Fed. R. Civ. P. 24(b) for an abuse of discretion. *United States ex rel Hernandez v. Team Finance, LLC*, 80 F.4th 571, 575 (5th Cir. 2023). A district court abuses its discretion when its denial of intervention is premised on erroneous statements of law or a clearly erroneous assessment of the evidence. *Id*.

"Appellate review of a motion to seal or unseal documents is for abuse of discretion." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019). "A district court abuses its discretion if it: (1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts." *Bradley on behalf of AJW*, 954 F.3d at 224 (internal

citation omitted). A "district court abuses its discretion in sealing or unsealing documents when it fails to identify and apply the proper legal standard and when it fails to provide sufficient reasons for its decision to enable appellate review." *June Medical Services, L.L.C. v. Phillips*, 22 F.4th 512, 519 (5th Cir. 2022).

## SUMMARY OF THE ARGUMENT

EFF has standing to intervene and to request that the district court unseal records in this case so that it and the public can better understand an important legal issue that has broader implications for the cable internet industry and patent law.

The district court's denial of EFF's motion to intervene was replete with legal and factual errors and constituted an abuse of discretion. Controlling law relaxes permissive intervention standards when members of the public seek to challenge the secrecy of judicial records, and EFF's motion satisfied those standards. The motion was timely; there was no cognizable prejudice to the parties in permitting EFF's intervention; the prejudice to denying EFF's intervention was high; and unusual circumstances weighed in EFF's favor. The district court ignored controlling law and held EFF to an arbitrary timeliness standard that the Fifth Circuit has explicitly rejected—including previously reversing the district court here. Neither controlling law nor the record support the district court's conclusion that Charter and Entropic would be prejudiced by EFF's intervention. Troublingly, the district court's reasoning for denying EFF's intervention could inhibit the public from coming

forward to challenge secrecy in all closed cases.

The district court's denial of EFF's motion to unseal should be reversed, too. The public has presumptive rights under the common law and First Amendment to access summary judgment briefs and related materials filed by Charter and Entropic. Rather than protect public access, the district court permitted the parties to file vast swaths of material under seal, some of which remains completely secret or is so heavily redacted that EFF cannot understand legal arguments and evidence used in denying Charter's license defense.

The district court endorsed these manifest violations of the public's rights of access on the theory that the stipulated protective order authorized the parties to seal these records. This was an abuse of discretion in several ways: the court failed to acknowledge, much less apply, the Fifth Circuit's law protecting public access to judicial records; it failed to conduct a document-by-document and line-by-line review of the materials before sealing them; and it never articulated specific countervailing interests that overrode the public's rights of access. Most glaringly, the district court engaged in a conflation error—equating the standards surrounding protective orders with those that protect public access to court records—that the Fifth Circuit has repeatedly reversed.

This Court should also reject the district court's reliance on a local rule as justification for its sealing practices. The district court's interpretation of a rule

permitting parties to file specific documents under seal that a court has previously authorized to be sealed cannot be read to permit the docket secrecy at issue here. The district court's interpretation defies the plain meaning of the rule, which explicitly limits its grant to sealing specific materials a court has already determined override the public's presumptive right of access. The district court's interpretation also puts the local rule in conflict with Fifth Circuit law protecting the public's rights of access. This Court can avoid that conflict by interpreting the rule as consistent with the public's rights of access.

Given that there is no record that enables this Court to review the propriety of the sealing below, this Court should reverse and remand with instructions that the district court undertake the careful analysis required before overriding the public's presumptive right of access and sealing judicial records.

## ARGUMENT

## I. EFF HAS STANDING TO INTERVENE AND TO UNSEAL JUDICIAL RECORDS.

EFF has standing to intervene and seek access to the Sealed Filings because their secrecy frustrates public access to judicial records, constituting a concrete injury under Article III. *See Team Finance, L.L.C.*, 80 F.4th at 576 (holding that intervenor had standing to "vindicate the public's right to access court documents"). Parties have standing to intervene to unseal regardless of whether they are "a third party whose sole interest in litigation is access to the documents." *U.S. v. Holy Land*

*Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (quoting *U.S. v. Hickey*, 185 F.3d 1064, 1066 (9th Cir. 1999)). The Fifth Circuit recognizes "[a]lleged violations of the public right to access judicial records" to be "cognizable injuries-in-fact sufficient to establish standing." *Team Finance, L.L.C.*, 80 F.4th at 577.

EFF's inability to access the Sealed Filings violates its common law and First Amendment rights to access judicial records. Appx662-665. EFF intends to report about the DOCSIS License, the parties' arguments, and the district court's decision, which might affect interpretation of other standard-essential patent licenses. Appx662-665. EFF thus has a concrete and particularized injury that continues so long as the Sealed Filings remain inaccessible. Appx662-665.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY DENYING EFF'S MOTION TO INTERVENE FOR THE LIMITED PURPOSE OF VINDICATING THE PUBLIC'S RIGHTS TO ACCESS JUDICIAL RECORDS.

### A. EFF's Intervention Request Satisfied All Four Factors Considered by the Fifth Circuit under Rule 24(b).

The Fifth Circuit generously permits intervention pursuant to Rule 24(b) by nonparties that seek access to sealed records or to otherwise challenge restrictions on access to judicial records. *See Team Finance, L.L.C.*, 80 F.4th at 578. "Nonparties to a case routinely access documents and records under a protective order or under seal in a civil case through motions for permissive intervention." *Newby v. Enron Corp.*, 443 F.3d 416, 424 (5th Cir. 2006). The Fifth Circuit is thus like every other

appellate circuit in recognizing that nonparties may intervene to access judicial records. *See, e.g., Team Finance, L.L.C.*, 80 F.4th at 578; *E.E.O.C. v. National Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (collecting cases); *In re Beef Industry Antitrust Litigation*, 589 F.2d 786, 789 (5th Cir. Tex. 1979); *see also Davis v. East Baton Rouge Parish Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996).

A nonparty's permissive right to intervene to challenge confidentiality orders comports with a policy of open courts and public access, given that there is a "strong presumption that all trial proceedings should be subject to scrutiny by the public." *Holy Land Found. for Relief & Dev.*, 624 F.3d at 690 (quoting *U.S. v. Ladd*, 218 F.3d 701, 703–04 (7th Cir. 2000)).

The Fifth Circuit considers four factors when reviewing Rule 24(b) intervention requests: (1) timeliness of the request, (2) prejudice to the parties should intervention be granted, (3) prejudice to the would-be intervenor should intervention be denied, and (4) any unusual circumstances. *See Team Finance, L.L.C.*, 80 F.4th at 578 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257 (5th Cir. 1977)).

The Fifth Circuit has relaxed some of the factors when intervention is by nonparties seeking access to sealed judicial records. For example, the Fifth Circuit has directed district courts to be flexible regarding the timeliness of intervention by public-access intervenors. *See Team Finance, L.L.C.*, 80 F.4th at 578. "[T]imeliness is not limited to chronological considerations but is to be determined from all the

circumstances." *Stallworth*, 558 F.2d at 263 (internal quotes omitted). The Fifth Circuit also interprets prejudice to the parties differently when a nonparty is intervening to seek access to judicial records. *See Newby*, 443 F.3d at 424.

### 1. EFF's Intervention Was Timely under Rule 24(b).

EFF's motion to intervene was timely under Rule 24(b) because it moved to intervene less than six weeks after the parties confirmed that they would not unseal the Sealed Filings, leaving no party to protect the public's right of access to judicial records. Appx601-603. The timeliness of an intervention is "measured from the moment that the prospective intervenor knew that his interests would 'no longer be protected.'" *Team Finance, L.L.C.*, 80 F.4th at 578 (quoting *Stallworth*, 558 F.2d at 264).

The moment EFF knew the public's presumptive rights of access would no longer be protected was after February 9, 2024, and its motion followed on March 20, 2024. Appx603; Appx581. Pursuant to the district court's Local Rule CV-7(h),[1]

---

[1] The rule has several substantive and procedural requirements. "For opposed motions, the substantive component requires, at a minimum, a personal conference, by telephone or in person, between an attorney for the movant and an attorney for the non-movant." The procedural requirements state in part that "[e]xcept as otherwise provided by this rule, a request for court intervention is not appropriate until the participants have met and conferred, in good faith, and concluded, in good faith, that the discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve." Filing an opposed motion without reasonably complying with the substantive and procedural requirements of the rule "is grounds for disciplinary action."

EFF initiated a meet and confer with Charter and Entropic on January 5, 2024, to flag violations of the public's right of access to judicial records and to ask that the parties correct those errors. Appx600-603; Appx620-636. EFF, Charter, and Entropic conferred via email and by phone, as required by Rule 7(h). Appx600-603. Entropic took no position on EFF's contention that the Sealed Filings should be public to the extent consistent with the public's rights of access. Appx602. Charter opposed EFF's request. Appx602. EFF confirmed that it and Charter were at an impasse within the meaning of Local Rule CV-7(h) after February 9, 2024, and subsequently sought the parties' positions on its forthcoming motion to intervene and to unseal. Appx603. Less than six weeks later, EFF filed its motion, accompanied by two declarations, a complaint in intervention, and multiple supporting exhibits. Appx581-666.

EFF's motion was timely because it came six weeks after Charter confirmed that it would not unseal any records. The Fifth Circuit has held that a months-long delay between a nonparty realizing its interests in sealed records would go unprotected and filing a motion is timely. *See Team Finance, L.L.C.*, 80 F.4th at 579. The fact that EFF moved more quickly than the intervenor in *Team Finance, L.L.C.* demonstrates that its motion was timely.

The district court abused its discretion in holding that EFF's motion to intervene was untimely.

***First***, the district court's opinion conflicts with controlling Fifth Circuit precedent. The district court's analysis begins by comparing the date on which the parties completed summary judgment briefing regarding Charter's license defense—October 11, 2023—with EFF's intervention motion in March 2024. Appx002-004. The court faulted EFF for not intervening at the conclusion of the briefing, given that the parties filed those materials under seal without a motion. Appx004.

The Fifth Circuit, however, has held that "it would be error to measure the length of delay solely from the parties' motions regarding sealing" as the period by which to measure timeliness under Rule 24. *Team Finance, L.L.C.*, 80 F.4th at 578. There were no motions to seal here, but the point of *Team Finance, L.L.C.* is that knowledge of the parties' sealing practices, without more, cannot form the sole basis for assessing timeliness. Knowledge cannot be the triggering event because "a court would need to observe that the parties were complacent or non-adversarial as to not protect the interests of potential intervenors." *Id*. EFF's intervention here became necessary only after it observed the parties were complacent to protect the public's presumptive right to access judicial records, and it concluded after a meet and confer that the parties would not protect the public's interest. Appx601-603. EFF's motion soon followed.

***Second***, *Stallworth* foreclosed the district court's reasoning that EFF's knowledge of the parties' sealing practices should be "the critical event" for

determining timeliness. *See* 558 F.2d at 264-65. *Stallworth* rejected transforming a potential intervenor's knowledge of litigation into the defining event for timeliness. *Id*. *Stallworth* reasoned that using knowledge as the triggering event would potentially encourage unnecessary early intervention—wasting judicial resources— or would, alternatively, punish worthy intervenors with real interests by artificially foreclosing their later intervention. *Id*. To avoid the Fifth Circuit's concern regarding wasting judicial resources, EFF approached the parties and conferred with them extensively regarding their sealing practices in the hopes of resolving the issue outside of court. Appx601-603; Appx619-636. It was only at the conclusion of that process that EFF moved to intervene. Appx603. The district court then artificially cut off worthy intervention—the Fifth Circuit's second concern——by analyzing EFF's timeliness based on its knowledge of the parties' sealing practices. *Stallworth*, 558 F.2d at 265. That analysis effectively barred EFF from advocating for the public's rights of access. *Id*. Thus, the district court's holding was "inconsistent with two important purposes of Rule 24" and constituted reversible error. *Id*.

**Third**, even if authority supported the district court's conclusion that timeliness here should be measured beginning in October 2023, the Fifth Circuit and other appellate jurisdictions have held that EFF's intervention would still be timely under Rule 24(b). *Team Finance* held that the five-month delay between the intervenor's motion and the closure of the case was timely, reversing the same

district court that denied EFF's motion here and calling its error "a significant one." 80 F.4th at 579. EFF's motion in March 2024 came five months after the parties completed their briefing in October 2023, corresponding with the period at issue in *Team Finance*.

Further, appellate courts across the country have held that intervention months and years later seeking to vindicate public access to judicial records is timely under Rule 24. *See Pansy v. Stroudsburg*, 23 F.3d 772, 778-79 (3d Cir. 1994) (granting a motion to intervene six months later and recognizing "the growing consensus among the courts of appeals [is] that intervention to challenge confidentiality orders may take place long after a case has been terminated."); *Rosado v. Bridgeport R.C. Diocesan Corp.*, 884 A.2d 981, 1015 (Conn. 2005) (permitting intervention one year after case closure). Thus, the district court's application of the timeliness factor should have resulted in concluding that EFF's motion was timely under Rule 24(b).

**Fourth**, the district court ignored the relevant facts in the record that justified EFF's timing. Nowhere in the district court's opinion does it mention EFF's compliance with the robust meet-and-confer process required by Local Rule CV-7(h). The rule requires that any party contemplating bringing a motion must engage all other parties in a conference, in person or by telephone, to discuss their proposed motion and to try in good faith to resolve their dispute. *Id*. The rule directs parties to take these requirements seriously and prohibits filing a motion until there is a

conclusive belief that the parties are at an impasse and must seek court intervention. *Id*. A failure to follow the rule can result in denial of the motion and attorney discipline. *Id*.

EFF assiduously followed Local Rule CV-7(h)'s requirements, meeting with the parties by telephone and reiterating its concerns about the lack of public access to the Sealed Materials over several weeks. Appx601-603; Appx619-636. It was only after the conclusion of that process that EFF understood that it had satisfied Local Rule CV-7(h)'s requirements and it could then move to intervene. EFF explained as much in its motion to ensure compliance with the rule. Appx596-597. By failing to analyze one of the principal reasons EFF's intervention came weeks after approaching the parties regarding their sealing practices, the district court erroneously disregarded key facts in the record. *See Team Finance, L.L.C.*, 80 F.4th at 575–76.

The district court puts intervenors in an untenable position. If an intervenor seeking access to judicial records moves too quickly, it could risk summary denial of their motion and attorney discipline pursuant to Local Rule CV-7(h). If an intervenor complies with Local Rule CV-7(h), it risks the district court holding that its intervention was untimely.

### 2. EFF's Intervention Did Not Prejudice the Parties.

EFF's intervention did not prejudice Entropic or Charter within the meaning

of Rule 24(b) because it did not seek to disturb the merits of the dispute or delay resolution of the case. Instead, EFF sought intervention for the limited purpose of challenging the propriety of sealed materials—an ancillary issue. A nonparty seeking to intervene to access sealed records does not prejudice the parties or delay adjudication of the parties' rights. *See Newby*, 443 F.3d at 424. Therefore, EFF's intervention posed no prejudice to Charter or Entropic.

Moreover, EFF's intervention would not cause any of the cognizable harms to Entropic or Charter that Rule 24(b)'s prejudice factor concerns. The cognizable harms relevant here are the potential of the intervenor to delay the progress of the case or to prejudice the rights of the original parties. *See Stallworth*, 558 F.2d at 265. EFF's intervention could not have delayed the progress of the patent dispute because the district court had already dismissed the case upon stipulation by the parties. Appx550. The parties' stipulated dismissal also determined their respective substantive rights, so they would not have encountered any prejudice from EFF's intervention regarding their sealing practices. Finally, Entropic did not oppose EFF's motion to intervene and is not participating in this appeal. Appx603; Letter to Jarret B. Perlow from Plaintiff Entropic Communications, LLC re: Notice of Non-Participation (June 20, 2024) (Dkt. No. 10) (Entropic Non-Participation Letter). It is difficult to imagine that Entropic would take such positions if it believed EFF's intervention prejudiced its interests.

The district court's conclusion that the parties would be prejudiced was an abuse of discretion.

*First*, the district court's prejudice conclusion was based on factors that are not cognizable under Rule 24(b). *See Stallworth*, 558 F.2d at 265. The prejudice factor requires assessing how intervention might delay the proceeding or affect the rights of the parties. *Id*. The court did not address those factors and, as said above, they are not present here. Instead, the district court held that the parties would be prejudiced by EFF's intervention because the three months between the case closing and EFF's motion required the parties to return to a case they had settled, including needing to reassemble the team of attorneys representing them. Appx004-005. The court cited no authority supporting that those reasons are cognizable harms that amount to prejudice within the meaning of Rule 24(b).

*Second*, even if such factors can be considered, the district court's conclusion that the parties were prejudiced by having to reassemble their litigation teams was an abuse of discretion because it was based on a clearly erroneous assessment of the record. *See Team Finance*, 80 F.4th at 575–76. The clearest evidence that the parties suffered no prejudice was Entropic's non-opposition below and its non-participation here. Appx603; Entropic Non-Participation Letter. The district court's opinion never mentions Entropic's non-opposition, which directly undercuts its conclusion regarding prejudice.

Moreover, the record also contradicts the district court's conclusion that Charter was forced to reassemble a litigation team unfamiliar with the case. Charter's counsel continued to participate in the case even after its closure. Appx551-580. After the district court entered the stipulated dismissal, Charter and Entropic sought the court's approval to file redacted public versions of (1) a transcript of a hearing and (2) a separate order concerning a different issue in the case. Appx551-580. As of the date of filing this brief, the district court has yet to rule on the parties' motion to redact the hearing transcript. Appx569-575. Further, the same counsel representing Charter in the district court responded to EFF's request to meet and confer, engaged in that process, and opposed EFF's motion. Appx603; Appx619-632. That same counsel represents Charter in this appeal. That reality is hard to square with the district court's claims that Charter had to jump back into the case and assemble a litigation team unfamiliar with the case.

*Third*, by limiting intervention to only cases that are open, or closed a few days prior to intervention, the district court's order conflicts with the far more nuanced approach courts take in resolving sealing issues in closed cases. The district court's order assumes that the finality associated with closing the merits of a case also makes any sealed records secret in perpetuity. In so doing, the district court erred in regarding the Sealed Filings "as if they sealed caskets rather than presumptively open court records." *In re Marriage of Nicholas*, 186 Cal.App.4th

1566, 1574 (Cal. App. 2010).

### 3. The Prejudice to EFF Weighs in Favor of Intervention.

EFF continues to be prejudiced by its inability to access the Sealed Filings. *See Stallworth*, 558 F.2d at 265-66; Appx662-665. The third intervention factor thus weighs in favor of EFF.

Unlike Charter and Entropic, EFF is prejudiced by the district court's denial of intervention. EFF's inability to challenge the propriety of the Sealed Filings is a concrete informational injury. *See Team Finance, L.L.C.*, 80 F.4th at 577. If EFF is denied intervention, no one can advocate for the public's rights of access and ensure that the records below are public to the greatest extent required by law. *See Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). EFF will be specifically prejudiced because it plans to report on the underlying substantive patent issue concerning the DOCSIS license and will disclose the records to anyone who reads its website. Appx662-665.

The district court's holding that EFF will suffer little prejudice if intervention is denied was an abuse of discretion.

*First*, the district court's holding that the parties' confidentiality concerns—heretofore untested—merited stronger consideration than the public's right of access conflicts with controlling precedent. Appx005-006. The Fifth Circuit has consistently held that the public's interest in understanding legal disputes and the

judicial process takes precedence over parties' confidentiality concerns: "The Judicial Branch belongs to the American people. And our processes should facilitate public scrutiny rather than frustrate it." *Le*, 990 F.3d at 421. "Excessive secrecy—particularly displacing the high bar for sealing orders with the low bar for protective orders—undercuts the public's right of access and thus undermines the public's faith in our justice system." *Id*. The district court flipped the law's presumption of public access, holding that secrecy was weightier than transparency.

***Second***, the district court's reasoning that a public order resolving a summary judgment motion was a sufficient substitute for the sealed judicial records also conflicts with Fifth Circuit precedent. Appx005-006. The Fifth Circuit previously rejected efforts to replace public access to judicial records with a narrower disclosure of information about a case, holding that the public has a right to access court records to see firsthand the work of public courts. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993). "'Public access [to judicial records] serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness.'" *Id*. (quoting *Littlejohn v. Bic Corp.*, 851 F.2d 673, 682 (3d Cir. 1988)) (alterations original).

Summaries prepared by a court cannot substitute for the public's rights of access to the same judicial records that courts rely on because access vindicates a

broader concern: the public's ability to understand the underlying dispute so that they can judge for themselves whether any proceeding or outcome is correct or fair. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980) ("People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."). This is particularly true regarding access to summary judgment materials because those dispositive motions adjudicate substantive rights and are often a substitute for trial. *See Foltz v. State Farm Mut. Auto Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

### 4. The Unusual Circumstances of the Sealing Practices in this Case Weigh in Favor of EFF's Intervention.

Finally, unusual circumstances also weigh in favor of EFF's intervention. *Stallworth*, 558 F.2d at 266.

***First***, as EFF described above, the unique meet-and-confer requirements of Local Rule CV-7(h) weigh in favor of EFF's motion because it took several weeks for the parties to confirm that they would not change their sealing practices. Appx601-603.

***Second***, the sealing practices at issue in this case present the type of unusual circumstances that weigh in favor of EFF intervening. The parties believe that a protective order can authorize sealing materials without first having to file motions to seal or to otherwise justify overriding the public's presumption of access to them. Appx633. Because neither party, nor the district court, challenged that contention,

there is no party present in the case advocating for the public's rights of access. EFF seeks to be that advocate. The district court held this factor to be neutral, but considering the above, it should have concluded that the factor weighed in EFF's favor and granted its motion to intervene.

### B. The Implications of the District Court's Denial of EFF's Motion to Intervene Effectively Frustrate Public Access to Sealed Records in Closed Cases.

Should the district court's holding on intervention stand, it could significantly limit the public's ability to access judicial records in closed cases that are often of great public importance. The district court held that EFF's motion to intervene was prejudicial because it came after the case had settled and the court had closed the case. Appx004-005. The court's logic suggests that public intervention in cases once they are closed is inherently prejudicial, and thus disfavored. That conclusion is erroneous, and it inhibits the public's ability to intervene and to unseal records in newsworthy cases far beyond patent disputes. This Court should reverse and affirm that the public can intervene in closed cases to vindicate its public rights of access.

Examples of where such intervention was permitted after case closure that resulted in the disclosure of important judicial records include:

The New York Times intervened in cases filed in Connecticut alleging that Catholic priests sexually abused minors roughly a year after the parties settled and the case was closed. *Rosado*, 884 A.2d at 986. The state's high court rejected

arguments the district court here adopted: a one-year delay in the news media moving to intervene after case closure was neither untimely nor prejudicial, given that it sought to litigate the propriety of sealing certain court records, an ancillary issue to the merits of the dispute. *Id*. at 1015-16. The unsealed records revealed that leaders in the diocese were aware of priests sexually abusing minors and, rather than removing them from their posts, reassigned those abusers to other locations where they victimized other children. *See* Paul Vitello, *Bridgeport Diocese Loses Bid to Keep Sex-Abuse Records Sealed*, New York Times (Oct. 5, 2009).[2]

In a defamation case involving Ghislaine Maxwell, an associate of Jeffrey Epstein, the Miami Herald sought to unseal records almost a year after the parties had settled and the case was closed. *See Brown v. Maxwell*, 929 F.3d 41, 46 (2d Cir. 2019). The unsealed records revealed how Epstein relied on lawyers and connections with powerful individuals to cover up allegations of sexual abuse involving minors, and disclosed facts that formed the basis for Maxwell's federal prosecution on sex-trafficking charges. *See* Jacob Shamsian, *This one lawsuit unleashed a flood of stories unraveling Jeffrey Epstein mysteries and led to Ghislaine Maxwell's arrest on sex-trafficking charges*, Business Insider (Nov. 18, 2021).[3]

News media intervened in a dispute between a town and the former chief of

---

[2] https://www.nytimes.com/2009/10/06/nyregion/06abuse.html.
[3] https://www.businessinsider.com/virginia-giuffre-lawsuit-led-to-criminal-case-ghislaine-maxwell-epstein-2021-11.

its police department to unseal a settlement agreement months after the case was closed. *See Pansy*, 23 F.3d at 776. The court held that the intervention was timely, relying on cases holding that intervention two and three years after case closure were timely. *See id*. at 780. The ex-chief filed the suit after town officials suspended and demoted him based on allegations that he mishandled parking meter money. *Id*. at 776. The unsealed settlement agreement showed the town agreed to pay the former chief $100,000, even though the former chief's actions became the subject of a criminal prosecution. *See* Staff Report, *Stroudsburg Settled With Pansy For $100,000*, Morning Call (July 29, 1994).[4]

Had the courts in the examples above denied intervention based on the underlying cases being closed, the judicial records at issue would likely not have been disclosed, preventing the public from fully understanding the cases and the newsworthy issues they raised. This Court should avoid endorsing such an outcome.

Moreover, relying on case closure for determining the propriety of intervention overlooks that there often are legitimate reasons for sealing records during the pendency of a case. Importantly, however, the interests that justified secrecy at that time may diminish once a case is closed. For example, courts have temporarily sealed records to protect parties from being the targets of physical violence. *See Estate of Hearst*, 67 Cal.App.3d 777, 784–85 (Cal. Ct. App. 1977). In

[4] https://www.mcall.com/1994/07/29/stroudsburg-settled-with-pansy-for-100000/.

criminal cases, courts have restricted public access to transcripts of certain pre-trial proceedings prior to a verdict to protect the defendant's constitutional right to a fair trial. *See Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 392–93 (1979). But fair trial concerns often vanish after a verdict. *See id*.; *Phoenix Newspapers, Inc. v. U.S. District Court*, 156 F.3d 940, 947 (9th Cir. 1998) ("Historically, post-trial transcript access has been granted as soon as the factors which prompted hearing closure have been resolved.").

## III. THE DISTRICT COURT ABUSED ITS DISCRETION BY FAILING TO APPLY CONTROLLING LAW GOVERNING PUBLIC ACCESS TO THE SEALED RECORDS.

The district court abused its discretion by permitting Charter and Entropic to seal a large volume of records without first determining whether the parties' concerns for secrecy for each document they sealed and redacted overrode the public's presumptive rights to access those judicial records. In endorsing the parties' secrecy, the district court refused to follow binding law governing the public's rights of access. It also misinterpreted a local rule to create a loophole in the public's right of access that allows parties and district courts to evade public scrutiny.

### A. The Public's Rights of Access to Judicial Records Prohibits Overbroad Sealing of Judicial Records.

#### 1. A Strong Presumption of Public Access Attaches to the Sealed Filings.

The First Amendment and common law guarantee the public's right to access

court proceedings and records. *Richmond Newspapers*, 448 U.S. at 573–75; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). "The public's right of access to judicial records is a fundamental element of the rule of law." *Le*, 990 F.3d at 417 (internal citation omitted). Accordingly, the Fifth Circuit "heavily disfavor[s] sealing information placed in the judicial record." *June Med. Servs., L.L.C*, 22 F.4th at 519–20.

The Sealed Filings at issue in this appeal are subject to the common law's presumptive right of access because they are legal briefs and exhibits filed on the district court's docket as part of a summary judgment proceeding. The common law right of access attaches to all documents filed on the public record in a court case, at which point they become judicial records. *Le*, 990 F.3d at 419. Further, documents filed in summary judgment proceedings are subject to the common law right of access because they seek "a dispositive order adjudicating the litigants' substantive rights (essentially a substitute for trial)." *Id*. at 420. Charter and Entropic filed the Sealed Filings as part of summary judgment proceeding regarding the DOCSIS license defense issue. Appx113; Appx114; Appx500; Appx530.

Once the common law's presumption of public access attaches to judicial records, a district court cannot seal materials without finding that the parties' interest in confidentiality strongly outweighs the public's right of access. The test for overriding the common law's presumptive right of access is "arduous." *June Med.*

*Servs., L.L.C.*, 22 F.4th at 521. "When a party seeks to file material under seal, the judge must 'undertake a case-by-case, document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure' and explain its sealing decision 'at a level of detail that will allow for this Court's review.'" *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410 (5th Cir. 2023) (quoting *Le*, 990 F.3d at 419) (cleaned up).

Because the public's common law right of access attaches to the Sealed Filings and presumes they must be disclosed absent overriding compelling reasons, this Court can resolve EFF's appeal on that basis. The Court need not reach EFF's argument that the corresponding First Amendment right of access attaches to the materials at issue and requires their disclosure. EFF seeks to preserve that issue in the district court on remand, and Charter did not challenge that contention below.[5]

---

[5] It does not appear that the Fifth Circuit has decided whether the First Amendment right of access attaches to summary judgment records. The First, Second, and Fourth Circuits have recognized that the First Amendment right of access attaches to summary judgment and other records used by courts to dispose of litigants' substantive rights. *See United States ex rel. Oberg v. Nelnet, Inc.*, 105 F.4th 161, 170–73 (4th Cir. 2024); *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986); *Joy v. North*, 692 F.2d 880, 893 (2d Cir. 1982). The courts have found that the First Amendment's history-and-logic test confirms access to these records because they are often a substitute for civil trials. *See United States ex rel. Oberg*, 105 F.4th at 171–72. Every circuit considering the issue has held that the public has a First Amendment right to access civil trials. *See Delaware Coalition for Open Government, Inc. v. Strine*, 733 F.3d 510, 514 (3d Cir. 2013) (collecting cases).

## 2. The Sealing Practices Endorsed by the District Court Violate the Public's Common Law Right of Access.

The docket below confirms that the district court repeatedly violated the public's common law right to access judicial records by permitting Charter and Entropic to seal evidence and argument filed in a summary judgment proceeding without any court order or other application of the stringent Fifth Circuit test described above. *See Le*, 990 F.3d at 420.

The Sealed Filings are significantly redacted or sealed entirely. Entropic and Charter each filed their respective briefs under seal without motions to do so. Appx062; Appx066; Appx069; Appx072. Even the DOCSIS License—the important agreement on which Charter's defense rests—is sealed in full. Appx113; Appx519. Only one sentence of the license is public because it is quoted in Magistrate Judge Payne's R&R. Appx540. The redacted public versions of the materials Charter and Entropic filed make it nearly impossible to follow the various legal issues at play. Appx616-617 (tabulating the Sealed Filings). Thus, EFF and the broader public are unable to fully understand the district court's decision on the DOCSIS License defense, much less the evidence and arguments it weighed in disposing of the issue. Appx662-665.

The secrecy surrounding the Sealed Filings is entirely unjustified, in violation of the public right of access. After the protective order was entered, "judicial records [were] sealed without any showing that secrecy is warranted or why the public's

presumptive right of access is subordinated." *Le*, 990 F.3d at 421; *see also id.* at 418–19 (stating that "[t]he public's right of access to judicial proceedings is fundamental," and "the working presumption is that judicial records should not be sealed"). Entropic and Charter never filed a single motion to seal any of the Sealed Filings. Both parties failed to articulate any compelling reasons supported by specific facts that outweighed the strong presumption in favor of public access. *See id.* at 419.

Rather than hold Charter and Entropic to the demanding standard required to override public access under the common law, the district court held that their sealing practices were legal. Appx006-008.

## B. The District Court Abused Its Discretion by Failing to Apply Fifth Circuit Precedent Protecting the Public Right of Access.

### 1. The District Court Failed to Articulate or Apply the Correct Legal Standard.

The district court abused its discretion in denying EFF's motion to access the Sealed Filings because it never applied controlling Fifth Circuit law holding that the right of access attaches to the materials and requires strict balancing prior to sealing them. A "court abuses its discretion if it 'ma[kes] no mention of the presumption in favor of the public's access to judicial records.'" *Le*, 990 F.3d at 419 (quoting *Van Waeyenberghe*, 990 F.2d at 849)). The section of the order devoted to EFF's unsealing request never even acknowledged the presumption of public access to the

records at issue. Appx006-008. Strikingly absent from this section of the court's order is any mention of the public's right of access, much less any citation to the authorities described above. Appx006-008. The failure of the court to identify this controlling law and then apply it constituted reversible error.[6]

## 2. The District Court Ignored Controlling Law that Prohibits Relying on a Protective Order to Seal Judicial Records.

The district court abandoned the strict balancing test required before sealing judicial records and concluded that they could be sealed *en masse* pursuant to a protective order. Appx007. The Fifth Circuit has repeatedly held that "[t]his conflation error—equating the standard for keeping unfiled discovery confidential with the standard for placing filed materials under seal—is a common one and one that over-privileges secrecy and devalues transparency." *Le*, 990 F.3d at 420. These "conflation errors (extending protective-order standards to material filed with the court)" are an abuse of discretion. *Id.* at 419–21; *June Med. Servs., L.L.C.*, 22 F.4th at 521.

---

[6] The opinion's lone reference to the public's right of access came in its discussion of EFF's motion to intervene, stating that "Litigants must have assurance that their confidential information will not be exposed to everyone who believes their own professional interests might benefit." Appx005. The Court should afford this generalized concern no weight because it did not affirmatively mention the public's right of access, did not bear on the district court's denial of the motion to seal, and provided no facts to support any claim of competitive harm. *See, e.g., N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare,* 781 F.3d 182, 204 (5th Cir. 2015); *I F G Port Holdings, L.L.C.*, 82 F.4th at 411–12.

The district court abused its discretion in relying on the protective order to seal the materials at issue because the legal standard used to protect information exchanged in discovery is lower. "Different legal standards govern protective orders and sealing orders." *June Med. Servs., L.L.C.*, 22 F.4th at 521. "Protective orders require a finding of 'good cause' by the district court and apply to documents produced in discovery." *Id.* (quoting *Le*, 990 F.3d at 419). "At the *discovery* stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper. [. . . ] But at the *adjudicative* stage, when materials enter the court record, the standard for shielding records from public view is far more arduous." *Le*, 990 F.3d at 420. "That a document qualifies for a protective order under Rule 26(c) for discovery says nothing about whether it should be sealed once it is placed in the *judicial record*." *June Med. Servs., L.L.C.*, 22 F.4th at 521.

Here, the district court erroneously found "that the parties properly filed under seal" any "information designated under the Protective Order." Appx007. Yet Fifth Circuit law is unequivocal that the district court's conclusion is an abuse of discretion: protective orders "would not justify sealing documents filed on the record in support of summary judgment." *Le*, 990 F.3d at 420, n.41. And treating protective orders as a permissible substitute for the "vastly more demanding" analysis required to seal "dispositive filings" is legal error. *Le*, 990 F.3d at 419 n.31, 420 n.41 (internal citation omitted).

The district court's reliance on the protective order was an abuse of discretion for at least two other reasons.

**_First_**, a protective order "provide[s] no valid legal basis for sealing these documents." _June Med. Servs., L.L.C._, 22 F.4th at 521. Charter and Entropic stipulated to the protective order, which was nearly verbatim to the district court's sample protective order for patent cases. _Compare_ Appx009-021 (stipulated protective order) _with_ Appx024-036 (sample protective order). Both the sample protective order and the protective order issued here contain the paragraphs requiring parties to file materials under seal that they self-designate as confidential. _Compare_ Appx018 (stipulated protective order) with Appx033 (sample protective order).

The district court signed the stipulated protective order nearly 11 months prior to Entropic's opening summary judgment brief, and ostensibly prior to the parties exchanging information during discovery. Appx021. As best as EFF can tell, at no point during the entry of the protective order did the district court make any specific findings of fact regarding any particular document the parties would be producing in discovery, much less filing with the court. Thus, nothing in the record indicates that as the court entered the stipulated protective order, it was making any specific authorization to seal any particular document.[7] _June Med. Servs., L.L.C._, 22 F.4th at

---

[7] It also does not appear as though the district court made any findings demonstrating that there was good cause to issue the protective order as required by Fed. R. Civ. P. 26(c)(1).

521.

**Second**, because the District Court replaced the "far more arduous" balancing test required to seal judicial records with the comparatively lenient "good cause" standard that governs protective orders and applies to documents produced in discovery, it "also used the wrong legal standard for sealing documents." *June Med. Servs., L.L.C.*, 22 F.4th at 521. This error warrants reversal. *Id.*; *Le*, 990 F.3d at 419–21.

### 3. The District Court Did Not Articulate Any Valid Reason to Seal the Documents.

The district court also abused its discretion by failing to identify "'*compelling* countervailing interests' sufficient to warrant nondisclosure of presumptively public judicial records." *I F G Port Holdings*, 82 F.4th at 412 (quoting *Le*, 990 F.3d at 421). This constitutes reversible error for at least two reasons:

**First**, nowhere in the district court's analysis of EFF's motion to unseal does it articulate what specific countervailing interests are at issue in the Sealed Filings, let alone explain why those interests justify such broad secrecy. The district court thus failed to engage in the analysis that the Fifth Circuit requires before sealing. *Le*, 990 F.3d at 419. Instead, the district court concluded that such secrecy was justified by the protective order. Appx007. For all the reasons explained above, this was error. *See June Med. Servs., L.L.C.*, 22 F.4th at 521.

**Second**, the district court's failure to identify and analyze any specific

countervailing secrecy interests constituted an abuse of discretion because it failed to create a factual record that would enable appellate review. *See Le*, 990 F.3d at 419. To satisfy this "specificity" requirement, the sealing order needed to articulate "detailed, clear, and specific findings" that supported sealing. *U.S. v. Sealed Search Warrants*, 868 F.3d 385, 397 (5th Cir. 2017). The district court provided no record upon which this Court can assess whether the Sealed Filings can remain under seal.

### 4. The District Court Failed to Individually Evaluate the Sealed Filings.

The district court was required to review every document and line within the Sealed Filings and balance the public's common law right of access against any interests favoring nondisclosure. *Le*, 990 F.3d at 419. It failed to do so, and instead permitted sealing of "any 'designated material' under the Protective Order" in the aggregate. Appx007. "It is the solemn duty of the judge to scrupulously examine each document sought to be sealed." *June Med. Servs., L.L.C.*, 22 F.4th at 521. The district court made no effort to comply with its duty. Instead, the district court "put the entire litigation under lock and key" based on the protective order. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1183 (9th Cir. 2006). There is no indication in the opinion that the district court "scrupulously examine[d] each document sought to be sealed," let alone balanced the public's right of access against any interest in maintaining the confidentiality of each document, or determined whether any sealing was "congruent to the need." *June Medical Servs., L.L.C.*, 22

F.4th at 521 (internal citation and quotation marks omitted).

## C. The District Court's Interpretation of Local Rule CV-5(a)(7)(B) Was Erroneous as a Matter Of Law.

The district court incorrectly tethered its conclusion that Charter and Entropic properly sealed the materials at issue to a warped interpretation of a local rule. Appx006-007. The Fifth Circuit reviews a district court's application of its local rules for an abuse of discretion. *See Macklin v. City of New Orleans*, 293 F.3d 237, 240 (5th Cir. 2002).

Local Rule CV-5(a)(7)(B) governs the process for filing sealed materials. It states:

> Unless authorized by statute or rule, a document in a civil case shall not be filed under seal unless it contains a statement by counsel following the certificate of service that certifies that (1) a motion to seal the document has been filed, or (2) the court already has granted authorization to seal the document.

Local Rule CV-5(a)(7)(B). The district court interpreted the second subpart of the local rule as permitting the wholesale sealing of the materials at issue, holding its entry of the protective order in the case constituted prior authorization to seal the documents. Appx007. Thus, the parties were never required to move to seal any of the materials prior to closing off public access.

The district court's interpretation of Local Rule CV-5(a)(7)(B) strains credulity. The plain meaning of Local Rule CV-5(a)(7)(B)(2) permits parties to file material under seal without a motion *only* after a district court has previously

conducted a document-by-document review of the materials, identified "specific" interests favoring secrecy "as to each document," and balanced those interests against "the strong presumption against sealing judicial records." *I F G Port Holdings*, 82 F.4th at 410–412 (internal citation omitted).

The district court's interpretation conflicts with controlling law protecting the public's right to access judicial records. The interpretation creates an exception that swallows the rule protecting the public's right of access to judicial records.

### 1. The Plain Meaning of Local Rule CV-5(a)(7)(B) Forecloses the District Court's Interpretation.

The district court's interpretation of Local Rule CV-5(a)(7)(B)(2) is incongruent with a sensible, plain text reading of the provision. In the Fifth Circuit, basic principles of statutory construction govern the interpretation of rules. *See Matter of Thalheim*, 853 F.2d 383, 387 (5th Cir. 1988). The first step in construing a rule is "determining whether the statutory text is plain and unambiguous." *Seago v. O'Malley*, 91 F.4th 386, 390 (5th Cir. 2024) (internal citation omitted). If so, a court must "enforce the statute's plain meaning, unless absurd." *Id.* (internal citation omitted). "In the absence of an indication to the contrary, words in a statute are assumed to bear their 'ordinary, contemporary, common meaning.'" *Walters v. Metro. Educ. Enterprises, Inc.*, 519 U.S. 202, 207 (1997) (citation omitted).

Local Rule CV-5(a)(7)(B)(2) has a plain and unambiguous meaning. It prohibits a document from being filed under seal without a motion unless counsel

certifies with the filing that "the court already has granted authorization to seal the document." The plain meaning of the provision is that sealing is permitted without a motion only after the district court has previously authorized the sealing—as required under controlling Fifth Circuit law—of the specific document being filed. Breaking the subpart down to its constituent components leads to this plain meaning.

Local Rule CV-5(a)(7)(B)(2) uses the present perfect tense—"already has granted"—and specifies that the authorization concerns sealing. This tense denotes "an act that has been completed." *Barrett v. United States*, 423 U.S. 212, 216 (1976); *see also Carr v. United States*, 560 U.S. 438, 447–48 (2010). The prior authorization described in the rule is for the court "to seal." The plain meaning of the phrase "to seal" incorporates the standards established by the Fifth Circuit described above that vindicate the public's right to access judicial records. *See June Medical Servs., L.L.C.*, 22 F.4th at 521.[8]

Finally, Local Rule CV-5(a)(7)(B)(2) specifies that the authorization concerns sealing "the document." Here, the rule uses "a definite article," (the) "with a singular noun," which references the "document as a discrete thing." *Niz-Chavez v. Garland,*

---

[8] The plain meaning of "to seal" is reinforced by the "reference" canon of statutory interpretation, which provides that a statutory reference to a "general subject . . . adopts the law on that subject." *Jam v. Int'l Fin. Corp.*, 586 U.S. 199, 209 (2019). The phrase "to seal" in Local Rule CV-5(a)(7)(B)(2) "can be given scope and content *only* by reference to the rules governing" motions to seal in the Fifth Circuit. *Id.* at 211 (emphasis added).

593 U.S. 155, 166 (2021).

The foregoing demonstrates that Local Rule CV-5(a)(7)(B)(2) permits sealing specific records without a motion only when the district court has previously determined that interests in secrecy substantially outweigh the public's common law right of access and justify sealing the specific document. The district court's interpretation defies this plain meaning in several respects.

*First*, the district court's interpretation of "authorization" expands that term to include protective orders. Yet the rule makes no mention of protective orders. This omission matters: because there is no reference to protective orders, "there is *nothing* in the text that says—or arguably, even suggests"—that a protective order could fulfill this requirement. *See Seago*, 91 F.4th at 391. If the provision "had intended" for prior protective orders to satisfy this standard, "surely it would have said so, but it did not." *Id.*

*Second*, the district court's interpretation means that protective orders can constitute authorization "to seal," even though the Fifth Circuit has repeatedly held that protective orders cannot serve as the basis for sealing. The district court's interpretation is thus contrary to the plain meaning of the term "to seal."

*Third*, the district court's interpretation conflicts with the plain meaning of "the document" because it permits the protective order to seal *any* document, rendering secret entire swaths of unknown documents the parties have exchanged in

discovery and later filed with the court. The rule's use of the definite article "the" contemplates a specific authorization to seal specific documents. Yet the district court's construction transforms the definite article "the" into an indefinite article, in plain conflict with the rule's text.

*Fourth*, to the extent the district court's interpretation rests on the provision of the protective order that required the parties to file under seal any material they designated as confidential, that similarly violates the plain text of Local Rule CV-5(a)(7)(B)(2). Appx007. In that scenario, the parties are making unchallenged, self-serving determinations about the confidentiality of the documents pursuant to the terms of the protective order. The court is not making any determinations itself, let alone any findings sufficient to authorize sealing records consistent with the public's right of access. Nothing in the text of Local Rule CV-5(a)(7)(B) permits a court to delegate its sealing authority to the parties. Indeed, the rule's allowance for parties to file materials under seal without a motion is conditioned on "the court already ha[ving] granted authorization to seal the document." Local Rule CV-5(a)(7)(B)(2). Neither the parties' designation in a protective order nor the court's entry of the protective order count as the previous authorization required by Local Rule CV-5(a)(7)(B)(2).

> **2.  The District Court's Interpretation of Local Rule CV-5(a)(7)(B)(2) Creates a Conflict that Should Be Avoided.**

The district court's interpretation of Local Rule CV-5(a)(7)(B)(2) sets the

provision on a collision course with the Fifth Circuit law protecting the public's common law right of access to judicial records. This Court can and should avoid that conflict by interpreting the local rule as complementing the public's right of access to judicial records. Where a district court's construction of a local rule would create an unnecessary conflict between the rule and federal law, and the plain text of the rule supports alternative construction that avoids these problem, appellate courts should adopt the nonconflicting interpretation. *See United States Gas Pipe Line Co. v. F.E.R.C.,* 824 F.2d 417, 436–37 (5th Cir. 1987); *see also John v. State of Louisiana*, 757 F.2d 698, 707 (5th Cir. 1985) ("although [the Fifth Circuit] normally defer[s] to a district court's construction of its own rules, [it is] not obliged to accept a construction that renders a facially innocuous rule inconsistent" with federal law); *cf Hersh v. U.S. ex rel. Mukasey*, 553 F.3d 743, 754 (5th Cir. 2008) (recognizing the canon of constitutional avoidance, in which courts construe laws to avoid raising constitutional concerns).

Under the district court's reading of Local Rule CV-5(a)(7)(B)(2), parties can seal judicial records concerning dispositive motions in their entirety so long as they have self-designated that material to be confidential under a protective order. Appx007. That result violates the public's right to access judicial records for all the reasons described above, *supra*, Section III.B. Specifically, it conflicts with controlling law that requires district courts to review documents in detail and make

specific findings about specific documents and the content of those documents to determine whether they can be sealed in full or in part. *See Le*, 990 F.3d at 419.

This Court can avoid the conflict created by the district court and interpret Local Rule CV-5(a)(7)(B)(2) as permitting parties to file records under seal only after that the court has previously undertaken the analysis required to override the public's presumptive right of access and seal specific records. *See United Gas Pipe Line Co.*, 824 F.2d at 436–37 (rejecting an interpretation of a local rule that would have conflicted with the Federal Rules of Appellate Procedure and the Natural Gas Act). That result resolves the conflict and reaffirms the public's presumptive right to access judicial records. *Id.*

## CONCLUSION

For the reasons stated above, this Court should reverse the district court's order denying EFF's motion to intervene and to unseal court records, hold that EFF is entitled to intervene, and remand to the district court with instructions to apply controlling law governing the public's right of access to judicial records.

Dated:  August 5, 2024

By: /s/ *Aaron Mackey*
      Aaron Mackey

Victoria Noble
ELECTRONIC FRONTIER FOUNDATION
815 Eddy Street
San Francisco, CA 94109
Telephone:  (415) 436-9333
Fax:  (415) 436-9993
amackey@eff.org

Christopher J. Morten
MORNINGSIDE HEIGHTS LEGAL
SERVICES, INC. (Columbia Law School)
435 W 116th St (Jerome Greene Hall),
Room 831
New York, NY 10027
cjm2002@columbia.edu

*Counsel for Movant-Appellant*
*Electronic Frontier Foundation*

# Addendum

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § | |
| | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:22-CV-00125-JRG |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Before the Court is third party Electronic Frontier Foundation's ("EFF") Motion to Intervene and to Unseal Court Records (the "Motion") (Dkt. No. 425).  Having considered the Motion and briefing, the Court finds that it should be **DENIED** for the reasons set forth herein.

**I.      BACKGROUND**

On April 27, 2022, Plaintiff Entropic Communications, LLC ("Plaintiff" or "Entropic") filed a Complaint against Defendant Charter Communications, Inc. ("Defendant" or "Charter") alleging infringement of six U.S. patents.  (Dkt. No. 1.)  In December 2023, the parties settled the case (Dkt. No. 407.)  The Court accepted and acknowledged the Parties' Stipulation of Dismissal and closed the case on December 10, 2023.  (Dkt. No. 408.)

On March 20, 2024, third party EFF moved to intervene "for the limited purpose of vindicating the public's right to access court records."  (Dkt. No. 425 at 1.)  That motion is now before the Court.

**II.      LEGAL STANDARD**

Courts may permit intervention in a civil action on an applicant's timely motion if the applicant: "(A) is given a conditional right to intervene by a federal statute; or (B) has a claim or

1

defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).
A threshold issue regarding an applicant's motion to intervene, whether as of right under Rule
24(a) or permissively under either prong of Rule 24(b), is that the application must be timely.  *Nat'l
Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 365 (1973).  Timeliness
under the permissive intervention standard is evaluated more strictly than under mandatory
intervention.  *Stallworth*, 558 F.2d at 266; *see also Rotstain v. Mendez*, 986 F.3d 931, 942 (5th Cir.
2021).

"[T]imeliness is not limited to chronological considerations but 'is to be determined from
all the circumstances.'"  *Stallworth*, 558 F.2d at 263.  The Fifth Circuit "assesses [timeliness]
through the factors set forth in *Stallworth v. Monsanto Co.*: (1) the length of time the movant
waited to file, (2) the prejudice to the existing parties from any delay, (3) the prejudice to the
movant if the intervention is denied, and (4) any unusual circumstances."  (Dkt. No. 471-1 at 8-9)
(citing 558 F.2d 257).

Further, "[p]ermissive intervention is 'wholly discretionary' and may be denied even
when the requirements of Rule 24(b) are satisfied."  *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300,
317 (5th Cir. 2021) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d
452, 471–72 (5th Cir. 1984)).

## III.    DISCUSSION

### A.    The Motion to Intervene

EFF seeks permissive intervention in this case and argues that its motion is timely.  (Dkt.
No. 425 at 13.)  The Court addresses each of the *Stallworth* factors on timeliness in turn.

#### 1.    The length of delay

To determine timeliness, "[a] court must . . . look to the actions of the litigants" and
determine "the moment that the prospective intervenor knew that his interest would 'no longer be

protected.'" *U.S. ex rel Hernandez v. Team Fin.*, 80 F.4th 571, 578 (5th Cir. 2023).  EFF argues that this moment occurred on November 29, 2023, when Magistrate Judge Payne issued his Report and Recommendation ("R&R") on Charter's DOCSIS license defense.  (*Id.* at 13; Dkt. No. 482 at 1-2.)  Alternatively, EFF argues that the relevant moment is December 8, 2023, when this Court adopted Magistrate Judge Payne's R&R.  (Dkt. No. 425 at 13.)  According to EFF, under either date, EFF filed its motion in less than four months, which is "well within the bounds of timeliness." (Dkt. No. 428 at 2.)

While Charter observes that EFF should have been aware of the DOCSIS license defense generally no later than May 24, 2023, the date of Charter's redacted Answer containing the defense (Dkt. No. 427 at 3), it does not appear to dispute that November 29, 2023 is the relevant moment for the timeliness inquiry.  However, it argues that EFF's four-month delay cannot be timely.  (*Id.* at 3-4; Dkt. No. 429 at 1-2.)

Having considered the above arguments, the Court finds that the length of delay in this case weighs against timeliness.  EFF seeks the unsealing of the briefing and exhibits relating to Plaintiff's Motion for Summary Judgment of No License Defense Based on DOCSIS.  (Dkt. No. 425 at 15.)  That motion was filed on September 11, 2023 and became fully briefed on October 11, 2023.  (Dkt. No. 177; Dkt. No. 267.)  The Court notes that EFF repeatedly characterized the DOCSIS license defense as a "key issue in this case."  (Dkt. No. 425 at 2.)  Furthermore, Charter put the public on notice of the defense almost four months before Plaintiff filed its summary judgment motion.  In light of these circumstances, this Court believes that EFF likely followed the filings in this case and had a particular interest in this summary judgment motion.  As such, common sense indicates that EFF would have known by the time the motion was fully briefed (October 11, 2023) *at the latest* that the documents were sealed without accompanying motions to

seal—*i.e.*, that its interest "would no longer be protected." *Hernandez*, 80 F.4th at 578.  EFF may even have attempted to access the sealed material on the docket before the issuance of Magistrate Judge Payne's R&R.  If it did, such shows earlier notice.  If it did not, such reveals a lack of diligence.  Based on the relevant date of October 11, 2023, EFF waited more than five months to file this Motion.  That filing is not timely.

Out of an abundance of caution, the Court conducts the same analysis under EFF's proposed date of November 29, 2023.  In light of EFF's characterization of the license defense as a "nationally important, precedent-setting case-dispositive defense" (Dkt. No. 425 at 1), the Court finds that a four-month delay is likewise untimely.

Accordingly, in the totality of the circumstances, the Court finds that the delay by EFF weighs against timeliness.

### 2.    The prejudice to the existing parties

EFF argues that permitting it to intervene will not prejudice the parties because EFF does not seek to revisit substantive issues already decided by the Court.  (*Id.* at 14.)  EFF points out that the parties have continued to raise sealing questions after the case was closed.  (*Id.*)

In response, Charter argues that allowing EFF to intervene would be prejudicial to the parties because the case team has already disbanded, and the parties would have to revisit confidentiality issues they reasonably believed were settled.  (Dkt. No. 427 at 4.)

The Court agrees with Charter.  Pulling the parties back into this case months after they had settled, after they have disbanded their case teams, and well after an Order of Dismissal directing the case be closed, is prejudicial.  Moreover, lawyers necessarily move onto the next case and familiarity with the issues and documents immediately begins to wane.  EFF's delay resulted in a four-month gap between the settlement and this Motion.  Had EFF intervened when the motion at issue became fully briefed, its Motion could have been contemporaneous with the settlement

4

when knowledge surrounding the relevant documents was fresh and the trial teams were engaged and focused.

Accordingly, the prejudice to the parties weighs against the timeliness of EFF's motion.

### 3.    The prejudice to the movant if intervention is denied

EFF contends that it has a "strong interesting in understanding and reporting on the DOCSIS License and DOCSIS License defense, and sealing prevents EFF from carrying out this reporting." (Dkt. No. 428 at 3.)  EFF further argues that Magistrate Judge Payne's R&R is not "a substitute" for the underlying motions and exhibits submitted to the Court.  (*Id.*)

Charter responds that Magistrate Judge Payne's R&R provides a thorough recitation and analysis of the license defense.  (Dkt. No. 427 at 4.)  Therefore, EFF would suffer no prejudice if intervention is denied.  (*Id.*)

Having reviewed the briefing and the R&R, this Court agrees with Charter and finds that EFF will suffer little, if any, material prejudice if the Motion to Intervene is denied.  As EFF admitted, Magistrate Judge Payne's R&R is entirely unredacted and summarizes the key issues relating to Charter's DOCSIS license defense.  (Dkt. No. 425 at 4-5.)  Despite EFF's complaints about how "little the public can [] glean about the DOCSIS dispute," EFF was able to clearly explain the two key license issues in its briefing.  (*Id.*)  While the Court is cognizant of the public's right to access court records, the decision to seal or unseal records is best left to the trial court "in light of the relevant facts and circumstances of the particular case." *Vantage Health Plan, Inc. v. Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019).  Litigants must have assurance that their confidential information will not be exposed to everyone who believes their own professional interests might benefit.  The Court must strike a fair balance between the competing interests of the public's right to access and the protection of confidentiality.  In light of Magistrate Judge Payne's publicly available, unredacted summary of the key issues relating to

**Appx005**

the license defense, this Court finds that EFF would suffer little, if any, material harm if intervention is denied.

### 4.    Any unusual circumstances

EFF argues that denying it leave to intervene in this case would "force EFF and other members of the public interested in court records [] to file motions early in litigation, before case-dispositive issues are decided or even briefed."  (Dkt. No. 428 at 3.)

In response, Charter points out that this factor focuses on any "unusual circumstances militating for or against the timeliness of a motion to intervene," not for or against intervention in general.  (Dkt. No. 429 at 3.)

The Court finds that EFF has not shown any unusual circumstances that militate in favor of a *determination of timeliness*.  Accordingly, this factor is neutral.

Having weighed the four *Stallworth* factors relevant to the timeliness inquiry under a totality of the circumstances, the Court finds that EFF's Motion to Intervene was not timely. Accordingly, the Court finds that EFF's Motion to Intervene should be and hereby is **DENIED**.

### B.    The Motion to Unseal

The Court next turns to the Motion to Unseal.

EFF argues that the parties improperly filed the briefings and exhibits relating to Plaintiff's Motion for Summary Judgment of No License Defense Based on DOCSIS (Dkt. Nos. 177, 215, 237, 267, 386 and their attachments) under seal without accompanying motions to seal.  (Dkt. No. 425 at 10-12; Dkt. No. 428 at 3-5.)  In support, EFF cites Local Rule CV-5(a)(7)(B)(2) and this Court's Standing Order Regarding Protection of Proprietary and/or Confidential Information to be Presented to the Court During Motion and Trial Practice.  (Dkt. No. 425 at 11; Dkt. No. 428 at 3-4.)  EFF further contends that the Protective Order in this case "cannot exempt Entropic and

Charter from their obligation to move to file judicial records under seal and to show why the public's presumptive right of access is subordinated." (Dkt. No. 425 at 12.)

In response, Charter contends that Local Rule CV-5(a)(7)(B)(2) allows parties to file documents under seal without a motion to seal when the Court "has already granted authorization to seal the document." (Dkt. No. 427 at 5-6.) Charter argues that the Protective Order in this case grants such authorization by requiring that "[a]ny designated material that is filed with the Court shall be filed under seal and shall remain under seal until further order of the Court." (Dkt. No. 427 at 2-3.) In addition, Charter contends that EFF improperly relies on a Standing Order that only applies to sealing confidential information during a public hearing or trial. (*Id.* at 6.) Therefore, according to Charter, the parties followed the proper procedures for sealing confidential documents. (*Id.* at 6.)

The Court agrees with Charter and finds that the parties properly filed under seal the confidential documents relating to Plaintiff's Motion for Summary Judgment of No License Defense Based on DOCSIS (Dkt. Nos. 177, 215, 237, 267, 386 and their attachments). As Charter correctly noted, the Protective Order in this case requires that any "designated material" under the Protective Order be filed under seal. (Dkt. No. 36 at 10.) In this context, the Court had already granted authorization to seal confidential information designated under the Protective Order under Local Rule CV-5(a)(7)(B)(2). As such, the parties need not file additional motions to seal such confidential information.

In addition, the Court notes that EFF's reliance on this Court's Standing Order Regarding Protection of Proprietary and/or Confidential Information To Be Presented to the Court During Motion and Trial Practice is misplaced. By its own terms, that Standing Order applies to the sealing of confidential information *during a public hearing or trial*, not during motion practice.

**Appx007**

Accordingly, the Court finds that EFF's Motion to Unseal Court Records should be and hereby is **DENIED**.

## IV.     CONCLUSION

For the foregoing reasons, the Court **DENIES** EFF's Motion to Intervene and to Unseal Court Records (Dkt. No. 425).

**So ORDERED and SIGNED this 2nd day of May, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

**Appx008**

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), I certify as follows:

1.     This Opening Brief of Movant - Appellant Electronic Frontier Foundation with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); and

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365, the word processing system used to prepare the brief, in 14 point font in Times New Roman font.

Dated: August 5, 2024                     By:  */s/ Aaron Mackey*
                                                            Aaron Mackey

                                                            *Counsel for Movant-Appellant*
                                                            *Electronic Frontier Foundation*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Federal Circuit by using the

appellate CM/ECF system on August 5, 2024.

I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the appellate CM/ECF system.


Dated: August 5, 2024                          By: _/s/ Aaron Mackey_____
                                                     Aaron Mackey

                                                     *Counsel for Movant-Appellant*
                                                     *Electronic Frontier Foundation*