No. 24-1896

*In the*

# United States Court of Appeals

*for the*

# Federal Circuit

---

ENTROPIC COMMUNICATIONS, LLC,
*Plaintiff*

v.

CHARTER COMMUNICATIONS, INC.,
*Defendant-Appellee*

v.

THE ELECTRONIC FRONTIER FOUNDATION,
*Movant-Appellant*

---

*On Appeal from the United States District Court for the Eastern District of Texas
in No. 2:22-cv-00125-JRG, Chief Judge J. Rodney Gilstrap*

## BRIEF OF NORA FREEMAN ENGSTROM, DAVID FREEMAN ENGSTROM, JONAH B. GELBACH, ROSE CARMEN GOLDBERG, AND BRIANNE HOLLAND-STERGAR AS *AMICI CURIAE* SUPPORTING THE APPELLANT AND REVERSAL

PROFESSOR MARK A. LEMLEY
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605
mlemley@law.stanford.edu

*Counsel for Amici Curiae*

 

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 24-1896 |
| **Short Case Caption** | Entropic Communications, LLC v. Charter Communications, Inc. |
| **Filing Party/Entity** | Nora Freeman Engstrom, David Freeman Engstrom, Jonah B. Gelbach, Rose Carmen Goldberg, Brianne Holland-Stergar |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/12/2024

Signature: /s/ Mark A. Lemley

Name: Professor Mark A. Lemley

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| See Appendix A (attached) | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☑   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Professor Mark A. Lemley, Stanford Law School | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below)   ☐ No   ☑ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# APPENDIX A

## List of Signatories
(Amici sign on their own behalf. Institutions listed for identification only.)

Nora Freeman Engstrom
Ernest W. McFarland Professor of Law at Stanford Law School

David Freeman Engstrom
LSVF Professor in Law at Stanford Law School

Jonah B. Gelbach
Herman F. Selvin Professor of Law at UC Berkeley School of Law

Rose Carmen Goldberg
Associate Director of Policy and Programs, Deborah L. Rhode Center
at Stanford Law School

Brianne Holland-Stergar
Civil Justice and Innovation Fellow, Deborah L. Rhode Center
at Stanford Law School

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................... ii

INTEREST OF AMICI CURIAE ........................................................... 1

SUMMARY OF ARGUMENT ............................................................... 3

ARGUMENT ......................................................................................... 7

    I.    The Trial Court Erred in Entering the Parties' Jointly-Filed Motion for Protective Order Without Finding "Good Cause." ......................... 7

        A.    A Court Must Find "Good Cause" to Enter a Protective Order . 7

        B.    Leading Scholars Agree that Courts Must Scrutinize Agreed-Upon Protective Orders ............................................................ 11

        C.    Rule 26(c)'s Rulemaking History Leaves No Doubt that Courts May Not Rubber Stamp Protective Orders, Even When the Motion for a Protective Order is Jointly Filed .......................... 13

        D.    The Trial Court's Entry of the Protective Order Is Representative of a Pervasive and Troubling Trend ................. 14

    II.    Compounding Its Error, the Trial Court Ignored Well-Established, Stringent Sealing Requirements When It Relied on the Unjustified Protective Order to Seal Court Records. ............................................ 16

        A.    Sealing Judicial Records is the Exception, Not the Norm ........ 17

        B.    When Evaluating Motions to Seal, Courts Cannot Take Shortcuts ................................................................................... 20

CONCLUSION .................................................................................... 24

STATEMENT OF PARTY INTEREST AND FINANCIAL CONTRIBUTIONS .............................................................................. 25

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Apple Inc. v. Samsung Elecs. Co.*,
  727 F.3d 1214 (Fed. Cir. 2013) ..................................................................8

*Binh Hoa Le v. Exeter Fin. Corp.*,
  990 F.3d 410 (5th Cir. 2021) ............................................................. *passim*

*Cable News Network, Inc. v. Fed. Bureau of Investigation*,
  984 F.3d 114 (D.C. Cir. 2021)....................................................................17

*Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*,
  178 F.3d 943 (7th Cir. 1999) ......................................................................21

*Cowley v. Pulsifer*,
  137 Mass. 392 (1884) ..................................................................................17

*DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*,
  990 F.3d 1364 (Fed. Cir. 2021) ........................................................ 4, 18, 21

*Glenmede Trust Co. v. Thompson*,
  56 F.3d 476 (3d Cir. 1995) .........................................................................13

*Harris v. Amoco Prod. Co.*,
  768 F.2d 669 (5th Cir. 1985) ....................................................................7–8

*Humphrey v. Burgos*,
  No. 2:06-cv-00045-APR (N.D. Ind. July 12, 2007) ....................................15

*I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*,
  82 F.4th 402 (5th Cir. 2023) .......................................................................19

In re *Cendant Corp.*,
  260 F.3d 183 (3d Cir. 2001) .......................................................................17

In re *Gitto Glob. Corp.*,
  422 F.3d 1 (1st Cir. 2005)...........................................................................18

In re *High Sulfur Content Gasoline Prods. Liab. Litig.*,
  517 F.3d 220 (5th Cir. 2008). .....................................................................17

In re *Nat'l Prescription Opiate Litig.*,
927 F.3d 919 (6th Cir. 2019) ...................................................................4, 10

In re *Roman Cath. Archbishop of Portland in Oregon*,
661 F.3d 417 (9th Cir. 2011) ...................................................................10

In re *Violation of Rule 28(D)*,
635 F.3d 1352 (Fed. Cir. 2011) ...............................................................11

*Jepson, Inc. v. Makita Elec. Works, Ltd.*,
30 F.3d 854 (7th Cir. 1994) .....................................................................10

*June Medical Servs., L.L.C. v. Phillips*,
22 F.4th 512 (5th Cir. 2022) ....................................... 19, 20, 21, 22

*Nixon v. Warner Commc'ns, Inc.*,
435 U.S. 589 (1978).................................................................................17

*Pansy v. Borough of Stroudsburg*,
23 F.3d 772 (3d Cir. 1994) ......................................................................10

*Pintos v. Pac. Creditors Ass'n*,
605 F.3d 665 (9th Cir. 2010) .....................................................................4

*Pub. Citizen v. Liggett Grp., Inc.*,
858 F.2d 775 (1st Cir. 1988)......................................................................8

*Rushford v. New Yorker Mag., Inc.*,
846 F.2d 249 (4th Cir. 1988) .....................................................................5

*S.E.C. v. Van Waeyenberghe*,
990 F.2d 845 (5th Cir. 1993) ...................................................................20

In re *Chiquita Brands Int'l, Inc.*,
965 F.3d 1238 (11th Cir. 2020) .............................................................9, 10

*Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*,
825 F.3d 299 (6th Cir. 2016) ............................................... 19, 20

*Uniloc 2017 LLC v. Apple, Inc.*,
964 F.3d 1351 (Fed. Cir. 2020) .................................................................8

*United States v. Ahsani*,
    76 F.4th 441 (5th Cir. 2023) .............................................................. 5, 18, 19

*United States v. Garrett*,
    571 F.2d 1323 (5th Cir. 1978) ....................................................................3, 9

*United States v. Holy Land Found. for Relief & Dev.*,
    624 F.3d 685 (5th Cir. 2010) ........................................................................19

*United States v. Holy Land Found. For Relief & Dev.*,
    624 F.3d 685 (5th Cir. 2010). ................................................................ 18, 19

**Statutes**

Fed R. Civ. P. 26(c)(1) ...........................................................................................3

**Other Authorities**

Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to
    the Courts*, 105 HARV. L. REV. 427, 491 (1991). ..........................................11

CHARLES ALLEN WRIGHT, ARTHUR & RICHARD L. MARCUS, FEDERAL PRACTICE
    & PROCEDURE § 2035 ...................................................................................11

FRANK B. CROSS, THE THEORY AND PRACTICE OF STATUTORY INTERPRETATION
    65 (2009) .......................................................................................................13

Howard M. Erichson, *Court-Ordered Confidentiality in Discovery*, 81 CHI-KENT
    L. REV. 357, 359 (2006) .................................................................................9

Laurie Kratky Doré, *Secrecy by Consent: The Use and Limits of Confidentiality
    in the Pursuit of Settlement*, 74 NOTRE DAME L. REV. 283, 342 (1999) .......12

Linda Greenhouse, *Judicial Conference Rejects More Secrecy in Civil Court*,
    N.Y. TIMES, Mar. 15, 1995 ..........................................................................13

Memorandum of Comm. on Rules of Practice and Procedure to Comm. on Rules
    of Practice and Procedure 18 (June 2, 1995). ...............................................13

Nora Freeman Engstrom, David Freeman Engstrom, Jonah B. Gelbach,
    Austin Peters & Aaron Schaffer-Neitz, *Secrecy by Stipulation*,
    74 DUKE L.J. (forthcoming 2024), *available at* https://law.stanford.edu/wp-
    content/uploads/2024/05/SSRN-id4811151.pdf ........................... 6, 14, 15, 16

ROBERT TIMOTHY REAGAN, FEDERAL JUDICIAL CENTER, CONFIDENTIAL
DISCOVERY:  A POCKET GUIDE ON PROTECTIVE ORDERS..............................12

S. REP NO. 110-439, at 9 (2008) (Conf. Rep.)..........................................................9

Seth Katsuya Endo, *Contracting for Confidential Discovery*,
53 U.C. DAVIS L. REV. 1249, 1259 (2020)....................................................12

**INTEREST OF AMICI CURIAE**

Nora Freeman Engstrom is the Ernest W. McFarland Professor of Law at Stanford Law School, where she currently serves as co-director of the Deborah L. Rhode Center on the Legal Profession (the "Rhode Center"). She is a nationally recognized expert in both tort law and legal ethics and has repeatedly published in the nation's top law journals, including the Yale Law Journal, the Stanford Law Review, and the N.Y.U. Law Review. Professor Engstrom is an elected member of the American Law Institute (ALI), holds the ALI's Ammi Cutter Chair, and is a Fellow of the American Bar Foundation.

David Freeman Engstrom is the LSVF Professor in Law at Stanford Law School, and is an expert in civil procedure, administrative law, constitutional law, law and technology, and empirical legal studies. He has published numerous works in leading law journals, including the Stanford Law Review and the Yale Law Journal. Professor Engstrom is an appointed member of the Administrative Conference of the United States and an elected member of the ALI. Along with Professor Nora Freeman Engstrom, he serves as co-director of the Rhode Center.

Jonah B. Gelbach is the Herman F. Selvin Professor of Law at UC Berkeley School of Law, and is an expert in civil procedure, law and economics, event study methodology, and applied statistical methodology, among other subjects. He has taught at the J.D., Ph.D., masters, and undergraduate levels and published in top

law and economics journals, including the American Economic Review, Stanford Law Review, and the Yale Law Journal.

Rose Carmen Goldberg is the Associate Director of Policy and Programs at the Rhode Center. Brianne Holland-Stergar is the Civil Justice and Innovation Fellow at the Rhode Center. Their research focuses on a variety of access to justice issues, including making the legal system more accessible and equitable.

Amici are currently leading the Transparency in Litigation project—a first-of-its-kind, large-scale empirical research project to explore the role of protective orders, motions to seal, and secret settlements within the American legal system.

Amici support Appellant's position that the trial court erroneously denied Appellant's motion to unseal court records.

All parties have consented to the filing of this brief.

Amici file this brief in their individual capacity as scholars. They have no financial interest in the outcome of this case, and no one other than the undersigned and counsel have contributed to the brief. They provide institutional affiliation solely for purposes of identification.

## SUMMARY OF ARGUMENT

"The public's right of access to judicial records is a fundamental element of the rule of law." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021) (quoting In re *Leopold to Unseal Certain Elec. Surveillance Application & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020)). Yet for decades, sealing orders and protective orders have improperly hidden deadly defects, pervasive abuse, and other matters of significant interest from the public, perpetuating unnecessary harm. The trial court's decision to seal the record below is a case in point. That trial court decision was grounded in two critical errors.

First, the trial court entered the parties' joint motion for a protective order without ever establishing that the parties had satisfied Federal Rule of Civil Procedure 26(c)'s good cause standard. *See* Appx009. Rule 26(c) is crystal clear that courts may only grant requests for protective orders for "good cause." Fed R. Civ. P. 26(c)(1). "Good cause" is a stringent standard, which is only satisfied if the movant offers "a particular and specific demonstration of fact." *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978). Yet here, not only did the trial court fail to address whether the parties had satisfied Rule 26(c)'s "good cause" standard, the trial court's protective order was devoid of *any* reasoning. Nor did the trial court even *attempt* to apply the good cause standard to the particular facts. Accordingly, in granting the parties' joint motion for a protective order, the trial

court abused its discretion.  *See* In re *Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019) ("A district court abuses its discretion where it makes neither factual findings nor legal arguments supporting the need for the [protective] order.") (quotation marks omitted).

Second, and compounding that elemental error, the trial court then relied on the bare terms of the protective order (which it had erroneously granted) to permit the parties to seal numerous judicial records.  In so doing, the court ran roughshod over numerous well-established requirements.

Judicial records are protected by common law and by the First Amendment. Given these protections, judicial records are presumptively public—and the presumption of openness is not easily overcome.  The movant who seeks to have a judicial record sealed must show that, if the material were disclosed, she would sustain "a clearly defined and serious injury."  *DePuy Synthes Prod., Inc. v. Veterinary Orthopedic Implants, Inc.*, 990 F.3d 1364, 1369 (Fed. Cir. 2021) (quotation omitted).  Indeed, only "the most compelling reasons can justify non-disclosure of judicial records."  *Id.* (quotation marks omitted); *see also Binh Hoa Le*, 990 F.3d at 421 (explaining that the presumption of openness "can be rebutted only by compelling countervailing interests favoring nondisclosure"); *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) ("[A] party seeking to seal judicial records must show that compelling reasons supported by specific factual

findings outweigh the general history of access and the public policies favoring disclosure.") (quotation marks and alterations omitted); *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988) (explaining that, when it comes to judicial records, "the denial of access must be necessitated by a compelling government interest and narrowly tailored to serve that interest").

Moreover, where a trial court finds that a compelling interest in secrecy outweighs the public's compelling interest in access, it must make "detailed, clear, and specific findings." *United States v. Ahsani*, 76 F.4th 441, 452 & n.27 (5th Cir. 2023). No such findings—indeed, no findings—were made here. Instead, the trial court ignored sealing requirements altogether, allowing the parties to police their own sealing via their previously entered protective order (which the court had, in turn, entered simply on the parties' say-so). This abdication of judicial responsibility flew in the face of Fifth Circuit precedent and violated the public's right of access.

The trial court's errors are all the more alarming and in need of correction because they are part of a troubling trend. We have conducted rigorous, first-of-its-kind research showing that stipulated protective orders are routinely and reflexively granted.[1] Examining more than 2.2 million federal court docket

---

[1] *See generally* Nora Freeman Engstrom, David Freeman Engstrom, Jonah B. Gelbach, Austin Peters & Aaron Schaffer-Neitz, *Secrecy by Stipulation*, 74 DUKE

reports, we find that most judges grant all, or almost all, of the stipulated motions for protective orders they consider, despite Rule 26(c)'s clear terms and unambiguous appellate rulings to the contrary. All told, judges grant 95% to 97% of all joint requests for POs, depending on the year. And, remarkably, over half of the judges who considered at least 25 stipulated protective orders in our dataset *never denied a single stipulated protective order request.* A closer look at a subset of the cases in our dataset indicates that protective orders are also routinely rubber-stamped: The majority (67%) of judges in our "grant" dataset did not even pay lip service to Rule 26(c)'s good cause standard, and 84% lacked a particularized assessment of the parties' need for secrecy.

Such brazen disregard for procedural rules and appellate oversight causes pernicious downstream effects. The trial court's decision here is a case-in-point. When it entered the parties' protective order, the trial court utterly failed to consider Rule 26(c)'s good cause standard—it merely acceded to the parties' desire to keep their information confidential, no questions asked. That decision created a flawed foundation upon which the trial court later relied to erroneously prohibit the public from accessing the parties' filings: Instead of upholding the public's presumptive right of access to those materials, the court again deferred to the

L.J. (forthcoming 2024), *available at* https://law.stanford.edu/wp-content/uploads/2024/05/SSRN-id4811151.pdf.

parties' self-interested desire for secrecy.  That abdication of judicial duty, both in

entering the protective order and in sealing judicial records, not only reflects a

stubborn refusal to abide by the rulings of the Fifth Circuit; it represents a stunning

disregard for the public's interest in maintaining an open and transparent court

system.  Indeed, "[p]ublic trust cannot coexist with a system wherein 'important

judicial decisions are made behind closed doors' and, worse, private litigants do

the closing." *Binh Hoa Le*, 990 F.4th at 418 (quoting *Vantage Health Plan, Inc. v.

Willis-Knighton Med. Ctr.*, 913 F.3d 443, 450 (5th Cir. 2019)).

In sum, the trial court egregiously erred when it relied on an erroneously

entered protective order to seal judicial records.  Its decision must not stand.

## ARGUMENT

In entering the parties' jointly-filed motion for a protective order, the trial

court failed to satisfy—or even pay lip service to—Federal Rule of Civil Procedure

26(c)(1)'s "good cause" standard.  This misstep, in turn, became the trial court's

basis for allowing the parties to file judicial records under seal.  This double-

layered dereliction of duty constituted a clear abuse of discretion.

**I.    The Trial Court Erred in Entering the Parties' Jointly-Filed Motion for a Protective Order Without Finding "Good Cause."**

### A. A Court Must Find "Good Cause" to Enter a Protective Order

When a party receives information during the discovery process, that party is

generally entitled to share the information she receives: "A party may generally do

what it wants with material obtained through the discovery process . . . ." *Harris v. Amoco Prod. Co*., 768 F.2d 669, 683–84 (5th Cir. 1985);[2] *see also Pub. Citizen v. Liggett Grp., Inc*., 858 F.2d 775, 790 (1st Cir. 1988) ("It is implicit in Rule 26(c)'s 'good cause' requirement that ordinarily (in the absence of good cause) a party receiving discovery materials might make them public."). But some types of information—such as trade secrets and competitively sensitive information— realistically should not be widely disseminated, nor should business competitors or other interested individuals necessarily be permitted to gain access to those materials by virtue of bringing a lawsuit. Federal Rule of Civil Procedure 26 provides a mechanism to override the presumptively public status of discovery materials.

Specifically, Rule 26(c)(1) provides that any party or person "from whom discovery is sought," may move for a protective order, and that "[t]he court may, for *good cause*, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed R. Civ. P. 26(c)

---

[2] Where, as here, an appeal does not involve substantive issues of patent law, the Federal Circuit applies the "law of the regional circuit in which the district court sits." *Apple Inc. v. Samsung Elecs. Co*., 727 F.3d 1214, 1220 (Fed. Cir. 2013). That means that, here, Fifth Circuit law governs this dispute. *See, e.g.*, *Uniloc 2017 LLC v. Apple, Inc*., 964 F.3d 1351, 1357 (Fed. Cir. 2020) (applying the law of the Ninth Circuit to resolve a dispute regarding the sealing of documents, where the dispute arose, initially, in a trial court within the Ninth Circuit).

(emphasis added).  The good cause standard—though less exacting than the standard to seal judicial records (discussed below)—is not easily satisfied.  It "contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *Garrett*, 571 F.2d at 1326 n.3 (5th Cir. 1978).  If the party seeking the protective order carries its burden of establishing good cause, the trial court may issue an order that, among other things, prohibits discovery, conditions its scope, prescribes special procedures for its dissemination, or limits who may view discovered or discoverable materials.  Fed R. Civ. P. 26(c)(1)(A)–(H).

        As occurred here, parties often jointly file a motion asking the court to enter an agreed-upon protective order.[3]  The majority of Circuits agree that, even where the parties stipulate to a protective order, trial judges are nonetheless duty-bound to

_____

[3] Why would disputing parties mutually agree that one side (often, a large corporate defendant) may shield potentially harmful information from public view? The answer, generally, is that a protective order's entry facilitates the discovery process—in part because, absent a protective order, the defendant may be more reluctant to divulge discoverable material.  *See*, *e.g.*, S. REP NO. 110-439, at 9 (2008) (Conf. Rep.) (testimony of Leslie Bailey) (explaining that plaintiffs' attorneys often agree to protective orders "out of necessity" because they know they cannot get access to documents necessary to litigate their client's case without one); *see also* Howard M. Erichson, *Court-Ordered Confidentiality in Discovery*, 81 CHI-KENT L. REV. 357, 359 (2006) ("With a protective order in place, a responding party is more willing to turn over information rather than asserting and litigating every plausible relevance objection and privilege objection.").

subject any ensuing proposed order to careful scrutiny.[4]  As the Sixth Circuit has put it: "In deciding whether to issue a stipulated protective order, the district court must independently determine if 'good cause' exists."  In re *Nat'l Prescription Opiate Litig.*, 927 F.3d 919, 929 (6th Cir. 2019); *accord Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Even if the parties agree that a protective order should be entered, they still have the burden of showing that good cause exists for issuance of that order.  It is equally apparent that the obverse also is true, i.e., if good cause is not shown, the discovery materials in question should not receive judicial protection.") (quotation marks omitted); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785–86 (3d Cir. 1994) (advising that, "whether an order of confidentiality is granted at the discovery stage or any other stage of litigation," and whether there is party agreement or party contestation, "good cause must be demonstrated to justify the order").  Although the Fifth Circuit has not spoken directly on the precise standard for stipulated protective orders,[5] the majority of Circuits agree that the parties' agreement to maintain the

---

[4] The Ninth and Eleventh Circuits have held that the parties' agreement satisfies the good cause standard.  *See* In re *Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1250 (11th Cir. 2020) (per curiam); In re *Roman Cath. Archbishop of Portland in Oregon*, 661 F.3d 417, 424 (9th Cir. 2011).  As discussed further herein, the Third, Sixth, and Seventh Circuits require more scrutiny.

[5] While the Fifth Circuit has stated that "[a]t the *discovery* stage, when parties are exchanging information, a stipulated protective order under Rule 26(c) may well be proper," *Binh Hoa Le*, 990 F.3d at 420, it has not expressly established whether

confidentiality of materials exchanged in discovery, without more, is not enough to justify the entry of a protective order. Critically, the Federal Circuit has likewise explained that "the district court cannot abdicate its responsibility to oversee the discovery process and to determine whether filings should be made available to the public simply because the parties agree to the protective order." In re *Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011) (quotation marks omitted).

### B. Leading Scholars Agree that Courts Must Scrutinize Agreed-Upon Protective Orders.

Leading scholars also agree that courts must scrutinize protective orders before entering them, even when the motion for a protective order is the product of party consent. The canonical Wright & Miller treatise, for instance, states that protective orders "are not authorized simply on the requesting parties' say-so." 8 CHARLES ALLEN WRIGHT, ARTHUR & RICHARD L. MARCUS, FEDERAL PRACTICE & PROCEDURE § 2035 (2024 update) [hereinafter WRIGHT & MILLER]. "Even when the parties consent," the treatise continues, "the court may not enter an order unless Rule 26(c) is satisfied." *Id.* Professor Arthur Miller has further explained that judges "must guard against any notion that the issuance of protective orders is routine, let alone automatic, even when the application is supported by all the

---

the parties must make a particularized, fact-specific showing to justify the order's entry.

parties." Arthur R. Miller, *Confidentiality, Protective Orders, and Public Access to the Courts*, 105 HARV. L. REV. 427, 491 (1991).

As other influential voices point out, this interpretation is the only one that aligns with the plain language of Rule 26(c). The Rule "does not carve out any exception, temporary or otherwise," that would excuse stipulated orders from its good cause requirement. Laurie Kratky Doré, *Secrecy by Consent: The Use and Limits of Confidentiality in the Pursuit of Settlement*, 74 NOTRE DAME L. REV. 283, 342 (1999); *accord* Erichson, *supra* at 373 (explaining that "the parties' say-so alone, without some showing of a need for confidentiality, does not constitute good cause for the granting of a protective order"); Seth Katsuya Endo, *Contracting for Confidential Discovery*, 53 U.C. DAVIS L. REV. 1249, 1259 (2020) ("After the parties propose a stipulated protective order, the court must determine if there is good cause to issue the order.").

Likewise, the Federal Judicial Center has advised: Even when the parties file a joint motion for a protective order, the parties' motion can only be granted upon an independent judicial determination "that the order is supported by good cause." ROBERT TIMOTHY REAGAN, FEDERAL JUDICIAL CENTER, CONFIDENTIAL DISCOVERY: A POCKET GUIDE ON PROTECTIVE ORDERS 6 (2012). The only reasonable interpretation of Rule 26(c) is that the willy-nilly grant of protective orders is flatly prohibited.

### C. Rule 26(c)'s Rulemaking History Leaves No Doubt that Courts May Not Rubber Stamp Protective Orders, Even When the Motion for a Protective Order is Jointly Filed.

Any doubts regarding the proper interpretation of Rule 26(c) are put to bed by the rulemaking history of Rule 26(c). In the mid-1990s, the Judicial Conference of the United States considered whether to amend Rule 26(c) to say that a protective order could be issued "for good cause shown *or* on stipulation of the parties." Memorandum of Comm. on Rules of Practice and Procedure to Comm. on Rules of Practice and Procedure 18 (June 2, 1995). The Judicial Conference rejected the amendment by voice vote, "expressing concern that the proposed rule would change existing practice by allowing entry of protective orders without a showing of good cause." Linda Greenhouse, *Judicial Conference Rejects More Secrecy in Civil Court*, N.Y. TIMES, Mar. 15, 1995, at B9.

Under the canon of statutory construction known as the "rejected proposal rule," non-adopted amendments can reflect what a statute is not. *See, e.g.*, FRANK B. CROSS, THE THEORY AND PRACTICE OF STATUTORY INTERPRETATION 65 (2009) (explaining that a rejected amendment "provides fairly persuasive evidence that the content of the amendment was not the legislative intent"). Again, the Judicial Conference expressly considered—and flatly rejected—an amendment to Rule 26(c) that would have allowed the parties' say-so to substitute for good cause. This fact is strong evidence that courts must scrutinize even agreed-upon protective

orders to ensure they satisfy the Rule's requirements. *See Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 485, 486 n.15 (3d Cir. 1995) (rejecting a reading of Rule 26(c) that would have been "tantamount to permitting the parties to control the use of protective orders," while drawing on this rejected amendment).

### D. The Trial Court's Entry of the Protective Order Is Representative of a Pervasive and Troubling Trend.

The trial court failed to perform the fact-specific inquiry required by Rule 26(c) when it granted the parties' joint motion for a protective order. Indeed, the trial court's order granting the protective order did not include any reasoning *whatsoever*. The court merely signed the parties' proposed protective order—a lightly revised version of the district court's Sample Patent Protective Order that does not even pay lip service to Rule 26(c)'s good cause requirement. *Compare* Appx009–021 *and* Appx024–036.

Unfortunately, in its casual disregard of Rule 26(c), the trial court was not alone. We have conducted rigorous, first-of-its-kind research that shows that protective orders are routinely granted without proper basis. *See generally* Nora Freeman Engstrom, David Freeman Engstrom, Jonah B. Gelbach, Austin Peters & Aaron Schaffer-Neitz, *Secrecy by Stipulation*, 74 DUKE L.J. (forthcoming 2024).

To reach this conclusion, our research team used sophisticated machine learning techniques to analyze a novel dataset consisting of more than 2.2 million federal court docket reports from 2005 through 2014. Ultimately, we found that

approximately 45% of protective order motions are the product of party consent.[6] *Id.* at 51. We also found that the proportion of stipulated protective orderes grew steadily over the study period among cases in which an answer was filed. *Id.* at 48–49. And, most provocatively, we discovered that most judges grant all, or almost all, of the jointly-filed motions for protective orders that they consider. We found that judges grant 95% to 97% of all joint requests for protective orders, depending on the year. *Id.* at 52–53. And we found that over half of the judges who considered at least twenty-five stipulated protective orders in our dataset *never denied a single stipulated protective order request*. *Id.* at 54.

We then supplemented our quantitative review with a qualitative analysis of 400 joint motions for POs; of these, 300 of the motions were granted, and 100 were denied. In all, about 67% of the stipulated protective orders in the "grant" dataset

---

[6] Our dataset includes docket-sheet information on case activity between January 1, 2005 and December 31, 2014, among more than 2.2 million cases filed between 2005 and 2012. To our knowledge, it is the most up-to-date and comprehensive federal district court dataset available for research currently in existence. The sophisticated text-based machine learning tools we used to analyze our dataset rely extensively on natural language processing, the branch of machine learning that performs text analytics. While no data extraction technique is perfect, our strategies yield high accuracy rates, particularly when compared to the standard keyword approaches used in existing literature.

did not even pay lip service to Rule 26(c)'s good cause standard, and 83% lacked a particularized assessment of the parties' need for secrecy.[7] *Id.* at 58–60.

Of course, in some patent cases—which frequently involve sensitive trade secrets or competitively sensitive information—the court may well conclude that Rule 26's good cause standard has been satisfied. Here, however, the trial court wholly ignored Rule 26's unambiguous requirements. Unfortunately, its action was hardly anomalous, despite Rule 26's clear terms and equally clear appellate guidance from this Court and others.

## II. Compounding Its Error, the Trial Court Ignored Well-Established, Stringent Sealing Requirements When It Relied on the Unjustified Protective Order to Seal Court Records.

As explained above, the trial court initially erred when it granted the parties' joint request for a protective order without performing the requisite analysis demanded by Rule 26(c). But the trial court's mistakes did not end there. Rather, the court compounded its blunder—and violated the public's presumptive right of

---

[7] Note, however, that a small number of orders (5.7%) mentioned possible injury stemming from disclosure without explicitly referencing "good cause." *E.g.*, Order Granting Motion to Enter Proposed Agreed PO, at 1, *Humphrey v. Burgos*, No. 2:06-cv-00045-APR (N.D. Ind. July 12, 2007), ECF No. 58 (specifying that "[party] contends that said documents . . . contain sensitive and proprietary information relating to its operations as a local government" and, if distributed, would disrupt "its ability to effectively carry out its police powers and activities").

access to judicial records—by relying on the bare terms of the protective order to allow the parties to file numerous motions and exhibits under seal.

### A. Sealing Judicial Records is the Exception, Not the Norm.

The public enjoys a well-established right of access to judicial records.[8] "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc*., 435 U.S. 589, 597 (1978). This right—which is deeply rooted both in common law and the First Amendment—plays an important role in American government. It "gives the federal judiciary 'a measure of accountability,' [and] in turn giv[es] the public 'confidence in the administration of justice.'" *Binh Hoa Le*, 990 F.3d at 417 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).[9] As such, the well-established "principle of public

---

[8] A document or testimony becomes a "judicial record," typically when it is "filed with the court, or otherwise incorporated or integrated into a district court's adjudicatory proceedings." In re *Cendant Corp*., 260 F.3d 183, 192 (3d Cir. 2001); *see also Cable News Network, Inc. v. Fed. Bureau of Investigation*, 984 F.3d 114, 118 (D.C. Cir. 2021) (explaining that a "judicial record" is any document filed to "influence a judge's decisionmaking"). In this case, the parties' motions and exhibits (filed under seal) are undeniably "judicial records." *See, e.g.*, Appx118–132, 135–37, 530–37, 551–59.

[9] Regarding public confidence, the Fifth Circuit has elaborated: "Public confidence [in our judicial system] cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." In re *High Sulfur Content Gasoline Prods. Liab. Litig*., 517 F.3d 220, 230 (5th Cir. 2008). Likewise, Oliver Wendel Holmes has explained:

access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself." *United States v. Holy Land Found. For Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010). Indeed, as the Fifth Circuit has recently emphasized, the presumption of access is "fundamental": It "gives the federal judiciary 'a measure of accountability,' in turn giving the public 'confidence in the administration of justice.'" *Binh Hoa Le*, 990 F.3d at 417 (5th Cir. 2021) (quoting *Amodeo*, 71 F.3d at 1048). Given the fundamental importance of the public right of access, courts—when assessing whether to seal judicial records—are to tread carefully. "[C]ourts should be ungenerous with their discretion to seal judicial records." *Binh Hoa Le*, 990 F.3d at 418. Unless the court finds a "compelling" reason to grant a party's motion to seal, the motion must be denied. *Id.* at 421; *see also* In re *Gitto Glob. Corp.*, 422 F.3d 1, 6 (1st Cir. 2005) (holding that "[o]nly the most compelling reasons can justify non-disclosure of judicial records") (citation omitted); *DePuy Synthes Prod.*, 990 F.3d at 1369 ("The law [regarding orders to seal] is substantially the same across circuits: the

---

It is desirable that the trial of causes should take place under the public eye, not because the controversies of one citizen with another are of public concern, but because it is of the highest moment that those who administer justice should always act under the sense of public responsibility, and that every citizen should be able to satisfy himself with his own eyes as to the mode in which a public duty is performed.

*Cowley v. Pulsifer*, 137 Mass. 392, 394 (1884) (Holmes, J.).

parties seeking confidentiality must present a strong justification to overcome the presumption of public access.").

Further, if a trial court *says* it has found a compelling reason to seal a court record, it must transparently show its work. The trial court must support its determination with "detailed [and] clear . . . findings." *United States v. Ahsani*, 76 F.4th 441, 452 & n.27 (5th Cir. 2023). Vague or conclusory statements are inadequate. *Id.*; *see also Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (explaining that, "even if neither party objects to the motion to seal," a "district court that chooses to seal court records must set forth specific findings and conclusions which justify nondisclosure to the public").

Beyond offering clarity, the trial court's findings must also be "specific" and granular. *Ahsani*, 76 F.4th at 452 & n.27. When depriving the public of the right to access judicial records, a court can't operate on a wholesale basis. It must, instead "undertake a document-by-document, line-by-line" evaluation—and, in so doing, scrupulously "balance[] . . . the public's common law right of access" against the party's or parties' countervailing interest in secrecy. *June Medical Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022) (quotation marks omitted).

If a trial court does not engage in that kind of exacting, page-by-page, point-by-point assessment, its decision to seal a judicial record constitutes an abuse of

discretion. *See, e.g.*, *I F G Port Holdings, L.L.C. v. Lake Charles Harbor & Terminal Dist.*, 82 F.4th 402, 410 (5th Cir. 2023) (finding that the trial court abused its discretion to seal judicial records when the court's relevant opinions "contain[ed] no reasoning"); *Holy Land Found. for Relief & Dev.*, 624 F.3d 685 at 690 (finding that the district court abused its discretion where the court failed to explain "why it chose to seal its opinion and order"); *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 850 (5th Cir. 1993) (reversing the district court's decision to seal where there was "no evidence in the record that the district court balanced the competing interests").

**B. When Evaluating Motions to Seal, Courts Cannot Take Shortcuts.**

Few would disagree that trial court judges are busy and burdened. In their haste, trial court judges sometimes fall prey to the temptation to grant a motion to seal simply because they have already granted a protective order—and it seems that the two secrecy mechanisms go hand-in-hand. But, as the Fifth Circuit has emphatically explained, this bootstrapping is inappropriate. Just because a trial court has entered a protective order, that does not excuse the court from performing an independent, particularized, intensive, "document-by-document, line-by-line" analysis to assess whether there is a compelling justification to seal a judicial record. *June Medical*, 22 F.4th at 521.

As the Fifth Circuit has emphasized: "[T]here is a stark difference between . . . 'protective orders' entered pursuant to the discovery provisions of Federal Rule of Civil Procedure 26, on the one hand, and orders to seal court records, on the other." *Shane Grp.*, 825 F.3d at 305. Just because a document, exchanged during the discovery process, is shielded from disclosure via "a protective order under Rule 26(c)," that fact "says *nothing* about whether it should be sealed once it is placed in the judicial record." *June Medical*, 22 F.4th at 521 (quotation marks omitted) (emphasis added).

Critically, even if the parties agree that material should remain confidential, courts must still uphold their "solemn duty" to "scrupulously examine each document sought to be sealed." *Id.* Courts have an "*independent* duty to protect the public's right of access—even when the parties agree to maintain confidentiality of publicly filed information pursuant to a protective order." *DePuy Synthes Prod*, 990 F.3d at 1370 (emphasis added); *see also Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co*., 178 F.3d 943, 945 (7th Cir. 1999) (Posner, J.) (emphasizing that a court "may not rubber stamp a stipulation to seal the record"). This independent, rigorous review is necessary because, as the Fifth Circuit has explained, when "the parties are mutually interested in secrecy," the court is the public interest's "only champion." *Binh Hoa Le*, 990 F.3d at 421.

*June Medical* and *Binh Hoa Le* are instructive. In both cases, the Fifth Circuit considered lower courts' decisions to automatically seal materials that the parties had deemed "confidential" pursuant to a protective order. *June Medical*, 22 F.4th at 521; *Binh Hoa Le*, 990 F.3d at 420. And in both cases, the Fifth Circuit reversed the lower courts' sealing decisions, finding that, in sealing the court record, the trial court abused its discretion. *June Medical*, 22 F.4th at 521; *Binh Hoa Le*, 990 F.3d at 420. The Fifth Circuit is crystal clear: Even on those occasions when a protective order is *appropriately* granted (which was not the case here), that does not mean that the separate, more rigorous standard regarding the sealing of a judicial record is necessarily satisfied.

Here, when entering the parties' protective order, the trial court abdicated its responsibility to perform an independent good cause analysis as demanded by Rule 26(c). It essentially delegated its 26(c) obligations to the parties. Then, it compounded that blunder by permitting the parties to file judicial records under seal without performing the requisite "document-by-document, line-by-line" review, balancing the public's compelling right of access against the parties' countervailing interest. *June Medical*, 22 F.4th at 521. Worse, in flagrant contravention of *June Medical* and *Binh Hoa Le*, it then justified its denial of Appellant Electronic Frontier Foundation's motion to unseal on the (nonsensical) grounds that it had "granted authorization to seal confidential information

22

designated under the Protective Order." Appx007. This topsy-turvy disregard of established Fifth Circuit law resulted in a decision that undermines the public's right of access to courts—a right that is a "fundamental element of the rule of law." *Binh Hoa Le*, 990 F.3d at 417 (quotation marks omitted).

*****

Courts must "zealously guard the public's right of access to judicial records—their judicial records—so that justice may not be done in a corner." *Binh Hoa Le*, 990 F.3d at 421 (quotation omitted). "All too often," however, "judicial records are sealed without any showing that secrecy is warranted or why the public's presumptive right of access is subordinated." *Id.* The trial court's abdication of its judicial duty is a case in point: by failing to account in any way for the public's interest in judicial records, the court contributed to a pernicious "*sub silentio* erosion of public access to the judiciary." *Id.* Greater care is needed to ensure that the transparency that is foundational to the public's faith in the American judicial system remains intact. A decision from this Court clarifying the appropriate standard for sealing records, as well as the entry of jointly-filed protective orders, will promote the public's fundamental right of access to judicial records, and uphold the American ideal of open, transparent courts.

## CONCLUSION

The trial court's decision flagrantly violated the law of the Fifth Circuit and stripped the public of its fundamental right of access to judicial records. Its decision, sadly, is all too common and perhaps even a trend. This Court should reverse the decision below and emphasize that Rule 26(c) and a parade of appellate rulings say what they say.

Date:  August 12, 2024

*Respectfully submitted,*

/s/ Mark A. Lemley
Professor Mark A. Lemley
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605
mlemley@law.stanford.edu

*Counsel for Amici Curiae*

## STATEMENT OF PARTY INTEREST
## AND FINANCIAL CONTRIBUTIONS

1.      Amici are the sole authors of this brief.  No party or party's counsel authored this brief, in whole or in part.

2.      No party or a party's counsel contributed money that was intended to fund preparing or submitting the brief.

3.      No person contributed money that was intended to fund preparing the brief.  The costs associated with filing this brief were paid by the Deborah L. Rhode Center at Stanford Law School.

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Federal Circuit Rules 29(a) and 32(b)(1).  It contains 5,772 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Federal Circuit Rule 32(b)(2).

2.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6).  This brief has been prepared in a proportionally spaced typeface using Times New Roman 14-point font in Microsoft Word.


Date:  August 12, 2024      *Respectfully submitted,*

/s/ Mark A. Lemley
Professor Mark A. Lemley
STANFORD LAW SCHOOL
559 Nathan Abbott Way
Stanford, California 94305
(650) 723-4605
mlemley@law.stanford.edu

*Counsel for Amici Curiae*